

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| | § | |
| EPICOUS ADVENTURE TRAVEL, LLC, | § | No. 08-18-00057-CV |
| | § | |
| Appellant, | § | Appeal from |
| | § | |
| v. | § | 327th District Court |
| | § | |
| TATEOSSIAN, INC. D/B/A SOCIAL FIX MEDIA, ALTERNATIVELY SOCIAL | § | of El Paso County, Texas |
| FIX MEDIA, AND TERRY TATEOSSIAN, | § | (TC # 2017-DCV-1030) |
| | § | |
| Appellees. | § | |
| | § | |

**O P I N I O N**

This is an appeal from a granted special appearance. Epicious Adventure Travel, LLC (Epicous) is a Texas entity.[1] It sued in a Texas court what it claimed was a New York entity (Tateossian, Inc. d/b/a Socialfix Media, which alternatively is named as a partnership by the same trade name) and a New Jersey resident (Terry Tateossian). We will collectively refer to these parties as the "Socialfix defendants." Responding to the suit, the Socialfix defendants challenged and prevailed on a special appearance. On appeal, Epicous claims that the Socialfix defendants (1) waived their special appearance by urging merits arguments, (2) purposely availed themselves

---

[1] The original petition and judgment spell the company name as "Epicious" while the owner's affidavit, the contract giving rise to this dispute, and both parties' briefs spell the name "Epicous." We use the latter spelling for the purposes of this opinion.

of the privilege of conducting activities within Texas through the collaborative use of an internet file-sharing platform, (3) relied on a defective affidavit in their special appearance, and finally (4) that the trial court erred when it denied Epicous jurisdictional discovery.

We reject each of these claims and affirm the decision below.

## BACKGROUND

This case arises out of a website gone wrong. Epicous is a travel agency that specializes in arranging travel to Africa. It sought to market its services through a website that included several specific features, such as a "hovering overlay" that would show different images as the user moved their cursor over the webpage. In December 2014, Epicous entered into a written contract with "Socialfix Media, Inc." to design and develop such a website. Under the terms of the contract, Socialfix charged $25,000 for its services and was to deliver the website by April 2015.[2] By July 2016, Epicous claimed the website was still not complete and working to its satisfaction. It claims to have paid over $43,500 to Socialfix and others for the fees under the contract and additional charges--all for a website that did not work as promised. Epicous ultimately hired another firm to complete the work.

It then sued the Socialfix defendants in a Texas district court asserting fraud, fraudulent inducement, and statutory consumer protection claims, all parsed under both Texas and New Jersey law. It also asserted a breach of contract claim against Socialfix Media. The Socialfix defendants answered with a special appearance. Following a non-evidentiary hearing, the trial court granted the special appearance and dismissed the case. Epicous files this appeal which raises four issues.

## WAIVER OF SPECIAL APPEARANCE

Epicous's first issue contends that the Socialfix defendants waived their special appearance

---

[2] The contract actually states a completion date of April 2, 2014, but presumably this is a typographical error given the contract is dated December 11, 2014.

by seeking general relief on a defect-in-parties issue.  To explain the argument, we begin with the defect.

## The Defect in Parties

Epicous entered into a contract with "Socialfix Media, Inc."  Yet, Epicous named in the suit "Tateossian, Inc. d/b/a Socialfix Media," alleging it to be a New York Corporation.  Alternatively, it named "Socialfix Media" as a New York partnership.  Epicous also named Terry Tateossian as a defendant.

The special appearance filed on behalf of Socialfix Media, Tateossian, Inc., and Teresa Tateossian, collectively referred to themselves as "Defendants."  At the outset, the pleading first states that "prior to the assertion or filing by Defendants of any other plea, pleading, or motion" they object to the exercise of jurisdiction over them based on the absence of sufficient minimum contacts to warrant the exercise of personal jurisdiction.

The next section of the pleading summarizes Epicous's allegations and asserts that Socialfix Media has no contacts with Texas and provided no goods or services here.  The special appearance further alleges that Teresa Tateossian (misnamed in the petition as Terry) is a resident of New Jersey and has never been to Texas, nor has any contacts with this State.  This section of the pleading further asserts that Tateossian, Inc. never did business with Epicous and was not an agent for any of the other defendants.

The pleading is supported by the affidavit of Teresa Tateossian.  She avers that Socialfix Media is the trade or assumed name of New Street Enterprises, Inc., a New Jersey corporation.  She is the president and shareholder of New Street Enterprises, Inc.  Further, Tateossian, Inc. is a New York corporation wholly owned by her sister, Marion Tateossian, who resides at the same home address as Teresa Tateossian.

**Controlling Law**

A party may challenge personal jurisdiction by filing a special appearance under TEX.R.CIV.P. 120a. The special appearance must be made by sworn motion filed prior to a motion to transfer venue or any other plea, pleading or motion, but other pleas, motions, and instruments can be contained in the same instrument. TEX.R.CIV.P. 120a(1); *see Exito Electronics Co., Ltd. v. Trejo*, 142 S.W.3d 302, 303 (Tex. 2004). Aside from the due-order-of-pleading requirement, Rule 120a also imposes a due-order-of-hearing requirement. *Trenz v. Peter Paul Petroleum Co.*, 388 S.W.3d 796, 800 (Tex.App.--Houston [1st Dist.] 2012, no pet.). The due-order-of-hearing requirement mandates that a special appearance motion "shall be heard and determined before a motion to transfer venue or any other plea or pleading may be heard." TEX.R.CIV.P. 120a(2); *Exito Electronics*, 142 S.W.3d at 306; *Restrepo v. Alliance Riggers & Constructors, Ltd.*, 538 S.W.3d 724, 735 (Tex.App.--El Paso 2017, no pet.). Failure to do so results in waiver of the special appearance. *Trenz*, 388 S.W.3d at 800; *Restrepo*, 538 S.W.3d at 735.

**Application**

As we understand Epicous's first issue, it contends that because the special appearance (1) disavows Tateossian, Inc.'s connection to the case, and (2) explains New Street Enterprises, Inc.'s role, it operates as an affirmative claim seeking a dismissal on the merits. Specifically, those allegations would constitute a claim of a defect-in-parties under TEX.R.CIV.P. 93(1), (2), (4), or (14). Epicous reasons that this merit-based argument was effectively ruled on, thus violating the due-order-of-hearing requirement for special appearances.

We reject Epicous's waiver argument for the simple reason that the Socialfix defendants did not file a Rule 93 affirmative defense, much less have the court rule on it before hearing the special appearance. The defensive pleading is denominated as a special appearance, and nowhere

4

explicitly cites to Rule 93. It does generally ask for a dismissal with prejudice in its request for relief, but the order granting the special appearance only generically dismisses the case. A dismissal for want of personal jurisdiction is without prejudice to refiling the claim in a forum with proper jurisdiction. *See Walz v. Martinez*, 307 S.W.3d 374, 383 (Tex.App.--San Antonio 2009, no pet.)(reforming judgment to be without prejudice); *Celanese Corp. v. Sahagun*, No. 05-16-00868-CV, 2017 WL 3405186, at \*12 (Tex.App.--Dallas Aug. 9, 2017, pet. denied)(mem. op.)(same). Merely asking for the wrong measure of relief in a special appearance does not transform it into something that it is not. *See Geo-Chevron Ortiz Ranch #2 v. Woodworth*, No. 04-06-00412-CV, 2007 WL 671340, at \*4 (Tex.App.--San Antonio Mar. 7, 2007, pet. denied)(mem. op.)("However, praying for dismissal with prejudice in a special appearance does not amount to a waiver.").

A defendant asserting a special appearance carries the burden to negate every ground for jurisdiction raised by the plaintiff's petition. *Kelly v. General Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). It may do so on either a factual or legal basis. *Id*. at 659. In this case, it just so happens that some of the same facts that the Socialfix defendants claim deprive a Texas court of jurisdiction, would also support a defense under Rule 93. Yet that does not mean that granting the special appearance also grants an unasserted Rule 93 defense. Suppose that a plaintiff sues Corporation A, alleging that agents of the corporation committed tortious acts in the forum state. If in filing a special appearance, Corporation A shows that the plaintiff has misnamed it as the defendant, and that the plaintiff actually dealt with Corporation B. Moreover, Corporation A has no contacts with the forum, either in general, or in relation to the specific transaction at issue. These factual assertions would support both a classic misnomer defense and a defect in jurisdiction. But just because the facts alleged may overlap with two defenses does not mean that a ruling on the special exception was preceded by a ruling on the merits of the case. We overrule

Issue One.

## PERSONAL JURISDICTION

In its second issue, Epicous contends that it established longarm jurisdiction over Appellees based on the parties' collaborative communications that were exchanged as the project progressed. Those communications mostly traversed via the internet.

### Standard of Review

Whether a court has personal jurisdiction over a defendant is a question of law. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789 (Tex. 2002). To reach the question of law, however, a trial court must sometimes resolve questions of fact. *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 805-06 (Tex. 2002). When everyone agrees on the relevant facts, our review is purely *de novo*. *Searcy v. Parex Resources, Inc.*, 496 S.W.3d 58, 66 (Tex. 2016); *Coleman*, 83 S.W.3d at 806. But if the parties disagree over the facts, we must look to what the trial court found. When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, as in this case, we imply all facts necessary to support the ruling which are supported by the evidence. *Marchand*, 83 S.W.3d at 795; *In re E.S.*, 304 S.W.3d 571, 574 (Tex.App.--El Paso 2010, pet. denied). If a party takes issue with any of the implied fact findings, they can be challenged under our traditional legal and factual sufficiency review standards. Roberson v. Robinson, 768 S.W.2d 280, 281 (Tex. 1989); Zac Smith & Co., Inc. v. Otis Elevator Co., 734 S.W.2d 662, 666 (Tex. 1987).

### Personal Jurisdiction

A Texas court may exercise jurisdiction over a nonresident defendant doing business in Texas as set out in our long-arm statute. TEX.CIV.PRAC.&REM.CODE ANN. §§ 17.041-.045. "Doing business in this state" includes a nonresident who:

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state; [or]

(2) commits a tort in whole or in part in this state;

*Id.* at § 17.042(1), (2). Yet even if a transaction falls within either of these definitions, a court's jurisdiction is further limited by the Due Process Clause to the U.S. Constitution. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). That is to say, the Texas long-arm statute extends a Texas court's personal jurisdiction "as far as the federal constitutional requirements of due process will permit" but no further. *U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977). Accordingly, the contours of federal due process guide our decision here.

Federal due process limits a court's jurisdiction over nonresident defendants unless: (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). "As a general rule, the exercise of judicial power is not lawful unless the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S.873, 877, 131 S.Ct. 2780, 2785, 180 L.Ed2d 765 (2011), *quoting Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005)("For half a century, the touchstone of jurisdictional due process has been 'purposeful availment.'"). Due process requires purposeful availment because personal jurisdiction "is premised on notions of implied consent-- that by invoking the benefits and protections of a forum's laws, a nonresident consents to suit there." *Michiana,* 168 S.W.3d at 785.

Purposeful availment includes deliberately engaging in significant activities within a state

7

or creating continuing obligations with residents of the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76, 105 S.Ct. 2174, 2183-84, 85 L.Ed.2d 528, 542-43 (1985). It includes seeking profit, benefits, or advantage from the forum. *Michiana*, 168 S.W.3d at 785. It excludes, however, "random" "fortuitous" or "attenuated" contacts or the "unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475-76, 105 S.Ct.at 2183-84; *Michiana*, 168 S.W.3d at 790 ("[M]inimum-contacts analysis focuses solely on the actions and reasonable expectations of the defendant."). Moreover, a party may purposefully avoid a particular forum by structuring its transactions in such a way as to neither profit from the forum's laws nor subject itself to jurisdiction there. *Moki Mac,* 221 S.W.3d at 575.

Personal jurisdiction can be either "general" or "specific." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996). General (or all purpose) jurisdiction describes a defendant with contacts so continuous and systematic "as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011). In such a case, the cause of action need not arise from the defendant's forum contacts. *CRS*, 925 S.W.2d at 595. However, as the Supreme Court has explained, it would be an "exceptional case" in which a company's activities in a state other than its principal place of business or formal place of incorporation might be "so substantial and of such a nature as to render the corporation at home in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 139, n.19, 134 S.Ct. 746, 761, 187 L.Ed.2d 624 (2014). Epicous conceded below that this is not a general jurisdiction case and it does not argue otherwise on appeal.

Rather, Epicous contends that the Socialfix defendants are subject to specific jurisdiction, which carries the additional burden of showing that the claim arises out of or is related to the

defendant's contacts with the forum. *Helicopter*os, 466 U.S. at 414 n.8, 104 S.Ct. at 1872; *Moki Mac*, 221 S.W.3d at 579 ("The 'arise from or relate to' requirement lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum."). Under the Texas application of that requirement, "for a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation." *Moki Mac*, 221 S.W.3d at 585. Specific jurisdiction is not as exacting as general jurisdiction in the sense that the contacts may be more sporadic or isolated so long as the cause of action arises out of those contacts. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010), *quoting* 4 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1067.5 (3d ed. 2002).

### Relevant Jurisdictional Facts

Epicous's original petition alleges that its owner, Sergio Rios, "shopped" for a website development company that could meet Epicous's specific needs. He discovered Socialfix's website and was impressed by various representations made about its personnel and services. The petition alleges that he then contacted Socialfix (whose principal place of business is in Kings County, New York) and spoke directly with Teresa Tateossian (who resided in Hunterdon County, New Jersey). After agreeing on the specific requirements for the website, they memorialized their agreement in a written contract. The balance of the factual allegations detail how the Socialfix defendants failed to meet the deadline for completing the website, how Epicous incurred unexpected cost overruns, and how it wound up with an inadequate product. The only specific jurisdictional allegation states: "This Court has jurisdiction over the parties in that the amount exceeds the minimum jurisdictional limits of this Court" and "Venue is proper in El Paso County, Texas because all or a substantial part of the events or omissions giving rise to this claim occurred

9

in El Paso County, and all of the injury occurred in El Paso County."

The Socialfix defendants rebutted this these claims with the affidavit of Teresa Tateossian. She averred that she is not a resident of Texas and has never been to the State. She is the president and shareholder of New Street Enterprises, Inc. that does business as Socialfix Media. That company has no offices or employees in Texas, nor does it advertise here. Rather, Epicous was referred to Socialfix Media by a third-party agency that had declined to take on Epicous as a client. No one from Socialfix has ever met in person with Epicous, as all their dealings "were conducted by telephone, Skype, and the internet."[3] Any goods and services at issue were provided in New Jersey. Finally, the named defendant "Tateossian, Inc." is a New York corporation that is wholly owned by her sister, Marion Tateossian, and had no connection to this transaction. The special appearance also attaches the written contract, that specifies that New Jersey law controls the transaction.

Prior to the hearing, Epicous filed a supplemental response with the affidavit of Sergio Rios. He averred that a third-party New York firm referred him to Socialfix Media. Contrary to the factual allegation in the original petition, he swore that "an individual representing a company purporting to be 'Social Fix' contacted me at my offices in Texas about doing the website design for Epicous." He also described an interactive process for development of the website:

> During the performance of the parties' obligations under the Agreement, I often logged onto an active website created by Terry's company to provide constant and ongoing comments and feedback to Terry's team. As we had discussed leading into the Agreement, and as provided in the Agreement, this constant feedback from me in Texas to Terry's team in New York was necessary to carry out the design of the website, which was the reason for Epicous retaining and paying Terry's company[.] . . . Per the Agreement, my ongoing involvement in the project from Epicous' offices in Texas was a material condition of Terry's company completing

---

[3] Skype is the tradename for a real time tele-video communication service that allows individuals to complete voice and video conferences through televisions, telephones, computers, or other mobile communication devices that are equipped with a "webcam" and an internet connection. *See In Interest of M.J.C.B.*, No. 11-14-00140-CV, 2014 WL 6433378, at *2, n.2 (Tex.App.--Eastland Nov. 14, 2014, no pet.)(mem. op.).

the project on time.

The contract term that he refers to states that the specified completion date is "based on timely feedback and communication from Client throughout the duration or the project."

In a supplemental brief filed after the special appearance hearing, Epicous also argued the interactive process was conducted through a third-party website called "Basecamp." *See State ex rel. Doe v. Tetrault*, 2012 WL 3641634, 2012-Ohio-3879, ¶ 5 (Ct.App. Ohio Aug. 27, 2012)(describing Basecamp as an "online project management website provided by a third party"); *Oculu, LLC v. Oculus VR, Inc.*, No. SACV 14-0196-DOC (JPRx), 2015 WL 12732897, at *1 (C.D. Cal. Mar. 3, 2015)(also describing Basecamp as "a project management application"). From this allegation, Epicous contends that the Socialfix defendants entered into a contract with a Texas resident that involved the transmission of "a large amount of data over the Internet" which is sufficient to sustain personal jurisdiction in Texas.

## Application

As we have noted before, "[s]tating the maxims for personal jurisdiction is often easier than applying them." *Semperit Technische Produkte Gesellschaft M.B.H. v. Hennessy*, 508 S.W.3d 569, 578 (Tex.App.--El Paso 2016, no pet.). Nonetheless, a fair application of these rules leads us to affirm the grant of the special appearance. We specifically conclude that the Socialfix defendants lack the minimum contacts requisite for a Texas court to exercise specific personal jurisdiction because the purposeful-availment requirement is not satisfied. Therefore, we need not address the "traditional notions of fair play and substantial justice" inquiry.

### Traditional Standards for Establishing Specific Jurisdiction

The trial court's ruling is supported by an application of the traditional notions for establishing personal jurisdiction. At the outset, Socialfix did not actively target Epicous in Texas. Under the pleaded allegations, Epicous researched who it believed were "top-tier" web developers,

11

and it contacted Socialfix. Its owner's affidavit later told a different story, but one with essentially the same theme. The owner contacted a New York firm that declined the business but referred Epicous to Socialfix. Only after that referral did someone from Socialfix call Epicous. At most, these parties came together based on the fortuitous actions of a *third party*, and not through the conduct of the Socialfix defendants. *See Moki Mac*, 221 S.W.3d at 577 ("[T]he facts alleged must indicate that the seller *intended to serve the Texas market. . . .* This rule accords with the due-process requirement that a nonresident defendant must take action that is purposefully directed *toward the forum state*."). [Emphasis added, citations omitted]. *Bryan v. Gordon*, 384 S.W.3d 908, 915 (Tex.App.--Houston [14th Dist.] 2012, no pet.)(real estate agent who contacted Texas resident based on belief that resident had requested the contact did not target Texas resident); *Furtek & Associates, L.L.C. v. Maxus Healthcare Partners, LLC*, No. 02-15-00309-CV, 2016 WL 1600850, at *6 (Tex.App.--Fort Worth Apr. 21, 2016, no pet.)(mem. op.)(defendant did not target Texas when third-party broker located in Florida initiated the contact between Pennsylvania defendant and Texas plaintiff).

And a single call, or even a series of calls leading to the signing of a contract by themselves would not sustain jurisdiction. *Michiana*, 168 S.W.3d at 791 ("[C]hanges in technology have made reliance on phone calls obsolete as proof of purposeful availment."); *Furtek*, 2016 WL 1600850 at *5 (collecting cases and stating that "Texas courts have consistently held that telephone calls, emails, and mail between a nonresident defendant and a Texas resident are insufficient minimum contacts to establish specific jurisdiction" and such "communications are insufficient to confer specific jurisdiction over nonresident defendants who use phones, computers or mail to do business with Texas residents").

Nor would the fact of a single contract with a Texas company sustain jurisdiction. That

was exactly the case *Michiana* when the sale of a single motorhome by an Indiana company to a Texas resident did not support jurisdiction over the retailer. *Id*. at 787. Similarly, in *CMMC v. Salinas*, a French manufacturer that made no effort to market its winepress equipment in Texas and had made only one other sale in Texas, was not subject to suit here. 929 S.W.2d 435, 439 (Tex. 1996); *see also Burger King*, 471 U.S. at 478, 105 S.Ct. at 2185 (saying if the question is whether a contract with a nonresident defendant alone can establish sufficient minimum contacts, "we believe the answer clearly is that it cannot").

The *Michiana* court does allow that in some circumstances a single contract might meet the purposeful-availment standard and provides as examples a franchise agreement that involves many contacts over a long period of time or the sale of a life-insurance policy that contemplates a relationship lasting until the death of the insured. 168 S.W.3d at 787. This contract, however, created a one-time sale with a limited-duration relationship. The contract was signed in December 2014 and should have been completed in April 2015 with the delivery of the website. Once delivered, Epicous had a three-day inspection period, after which Socialfix would fix any problems within four days. Then Epicous had another three-day inspection period. The contract terminated upon delivery of final product. The agreement disclaimed any on-going website maintenance unless a maintenance plan was specifically purchased. The contract quotes the price for, but does not specifically include any post delivery services, such as hosting the webpage on a server.

Finally, the contract states that it is governed by New Jersey law. While choice of law clauses are not determinative, they can demonstrate that a party never anticipated Texas jurisdiction. *See Burger King*, 471 U.S. at 482, 105 S.Ct. 2174 (choice of law provision cannot be ignored when weighing purposeful availment); *IRA Resources, Inc. v. Griego*, 221 S.W.3d 592, 599 (Tex. 2007)(considering choice of law clause among several factors in deciding appeal form

13

special appearance).

### *The Internet Component*

The crux of Epicous's argument turns on communications between the Socialfix defendants and Epicous as the project progressed. And most of these communications it claims were over the internet through a website that allows collaborative work on projects. In a bygone era, representatives from either Epicous or Socialfix Media may have traveled to one or the other's office, or some other location, to agree face-to-face on the design and details of the website. But "[t]he Internet is a global communications network that makes it possible to conduct business throughout the world entirely from a desktop." *Jones v. Beech Aircraft Corp.*, 995 S.W.2d 767, 772 (Tex.App.--San Antonio 1999, pet. dism'd w.o.j., mand. denied). Companies can now solicit and contract with customers entirely through websites, and as claimed here, provide services through web-based interactions. And with that change comes a challenge to the law of personal jurisdiction that was grounded in the time of *International Shoe*, when salespersons sold goods and services face-to-face with customers in the forum state. 326 U.S. at 314, 66 S.Ct. at 156; *see Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184 ("[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted.").

One of the first courts to deal with the jurisdictional implications of the internet-based commerce devised a sliding scale view of websites activities. *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D. Pa. 1997). On one end of the scale are activities involving the knowing and repeated transmission of computer files over the Internet with the forum jurisdiction. *Id*. at 1124. For such cases, the *Zippo* court believed personal jurisdiction was proper.

14

On the other end of the scale are websites that are simply passive advertisements which do not justify the exercise personal jurisdiction. *Id*. "The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id*. We have previously applied this test,[4] as has the Fifth Circuit,[5] and several of our sister courts of appeals.[6]

Use of the test, however, is complicated in this case because we essentially must consider two websites--one that Socialfix Media used to advertise its own services, and one that a third party ("Basecamp") operates on which Epicous claims it interacted with the Socialfix defendants over the design of Epicous's website. While we agree that the sliding scale test is useful for analyzing Socialfix Media's own website, we have reservations about its application to the third-party website. Two courts of appeals have limited the application of the sliding scale test in that latter situation. *Moulton v. Shane*, No. 04-18-00338-CV, 2018 WL 6517395, at *5 (Tex.App.--San Antonio Dec. 12, 2018, no pet. h.)(mem. op.)(sliding scale did not apply to Kickstarter website where person could post proposal to solicit funds for a project); *Wilkerson v. RSL Funding, L.L.C.*, 388 S.W.3d 668, 676 (Tex.App.--Houston [1st Dist.] 2011, pet. denied)(declining to consider

---

[4] *Keenan v. Aguilar*, 391 S.W.3d 620, 625 (Tex.App.--El Paso 2012, no pet.)(use of E-Bay to sell motorhome); *I & JC Corp. v. Helen of Troy L.P.*, 164 S.W.3d 877, 888 (Tex.App.--El Paso 2005, pet. denied)(interactive website selling hair care products).

[5] *Mink v. AAAA Development LLC,* 190 F.3d 333 (5th Cir. 1999). The Fifth Circuit has, however, concluded that the sliding scale analysis is not well adapted to questions of general jurisdiction. *See Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

[6] *All Star Enter., Inc. v. Buchanan*, 298 S.W.3d 404, 426 (Tex.App.--Houston [14th Dist.] 2009, no pet.); *Choice Auto Brokers, Inc. v. Dawson*, 274 S.W.3d 172, 177 n.2 (Tex.App.--Houston [1st Dist.] 2008, no pet.); *Reiff v. Roy,* 115 S.W.3d 700, 705 (Tex.App.--Dallas 2003, pet. denied); *Michel v. Rocket Eng'g Corp.,* 45 S.W.3d 658, 677 (Tex.App.--Fort Worth 2001, no pet.); *Riviera Operating Corp. v. Dawson,* 29 S.W.3d 905, 911 (Tex.App.--Beaumont 2000, pet. denied); *Jones v. Beech Aircraft Corp.,* 995 S.W.2d 767, 772 (Tex.App.--San Antonio 1999, pet. dism'd w.o.j.*); but see Retire Happy, L.L.C. v. Tanner*, No. 07-16-00134-CV, 2017 WL 393984, at *4 (Tex.App.--Amarillo Jan. 27, 2017, no pet.)(stating "a website's passivity or interactivity alone does not necessarily suggest purposeful availment").

interactive features of Yahoo! And Yelp on which defendant had posted negative information about plaintiff). We need not directly address that question, however, because even if it applies, the sliding scale test does not aide Epicous for either website in establishing specific jurisdiction.

First, Socialfix's own website passively shares information and would not support personal jurisdiction. Epicous's petition contains several screen shots of the Socialfix website, but each screen shot only reflects the sharing of information. Thus, the only evidence of Socialfix Media's website is too passive to support jurisdiction. *See e.g. Gessmann v. Stephens*, 51 S.W.3d 329, 339 (Tex.App.--Tyler 2001, no pet.)(website that contained company log and link to email address did not support jurisdiction); *Mink*, 190 F.3d at 336-37 (website that posted information about products and services, provided users with a printable mail-in order form, and posted contact information was similarly deemed passive).

And even were we to consider the sliding scale analysis with regard to the Basecamp website, the thin record here is not sufficient to overcome the implied findings negating jurisdiction. Epicous's petition made only the conclusory jurisdictional allegation that "the events or omissions giving rise to this claim occurred in El Paso County." The Socialfix defendants rebutted that assertion with an affidavit that disclaimed any meaningful contacts with Texas. Epicous's responsive affidavit then at most states that during the parties' dealings, Epicous provided "constant and ongoing comments and feedback" to Socialfix's team, which was contemplated by the contract. And its later briefing claims it did so through a third-party website that allows different entities to collaborate by sharing data and communications.[7]

The trial court, however, had no information about (1) any communications from the Socialfix defendants to Epicous; (2) the types, size, or numbers of files transferred; (3) the

---

[7] Both parties cite us to the Basecamp webpage that describes its features and functions.

16

quantitative frequency of file transfers; (4) their content, or actual importance to the project; and (5) the specific design of the Basecamp webpage for this transaction.[8] Without any of these details, the trial court could not have discerned if the cause of action arose from those particular communications, as specific jurisdiction requires. *See Helicopter*os, 466 U.S. at 414 n.8, 104 S.Ct. at 1872; *Moki Mac*, 221 S.W.3d at 579. Moreover, the Fifth Circuit has concluded that internet-based jurisdictional claims must be "evaluated on a case-by-case basis, focusing on the nature and quality of online and offline contacts to demonstrate the requisite purposeful conduct that establishes personal jurisdiction." *Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 227 n.7 (5th Cir. 2012). None of that level of details was available to the trial court below, and hence nothing in our record can overcome its implied findings supporting its ruling.

Finally, given the way the parties structured the transaction, the Socialfix defendants never directly sent anything to Texas. Rather, the communications were hosted by a third-party website in some unknown forum. Epicous centers its argument on this arrangement, but it is not helpful to its case. If, for instance, a Texas resident contracts with a New Jersey service provider, and they meet in Missouri to confer on the status of the project, the fact of the Missouri meeting would hardly be helpful to the Texas resident in a jurisdictional sense. By the same token, both these parties effectively "met" on a server hosted by a third-party located in some unknown jurisdiction. In that way, the Socialfix defendants may have sent files and messages to the third-party server and retrieved from the same server information that Epicous placed there, but that would not show direct communication to or from Texas.

Epicous's second issue is overruled.

---

[8] Basecamp apparently allows for several features that the participants can custom configure to suit their particular purpose. https://basecamp.com/how-it-works (last visited 1/3/2019).

17

**LACK OF DISCOVERY**

In its third issue, Epicous asks "Whether the Trial Court Abused its Discretion in *Failing to Acknowledge* Plaintiff's Repeated Requests to Conduct Jurisdictional Discovery." [Emphasis added]. We overrule the issue because we can find no distinct ruling anywhere in our record where the trial court refused a specific request for jurisdictional discovery necessary to resolve the special appearance.

Epicous filed suit on March 27, 2017 and served discovery with its original petition. The Socialfix defendants filed their special appearance on August 16, 2017. The record does not show whether that discovery was answered, nor does the record contain any motion to compel any discovery answers. Epicous's brief contains the assertion in its Statement of Facts that the district court stayed discovery in the case at a status and scheduling conference on September 11, 2017. The Socialfix defendants do not challenge that statement, which we will accept as true. *See* TEX.R.APP.P. 38.1(g)("In a civil case, the court will accept as true the facts stated unless another party contradicts them."). Yet we have no record from that hearing, and no information on why a stay was entered.

The court set the special appearance for hearing on January 24, 2018. Two days before the hearing, Epicous filed a supplemental response, and in its request for relief, asked the trial court to deny the special appearance, or alternatively allow it to conduct jurisdictional discovery for six months, and then reset the hearing. At the special appearance hearing, Epicous did not complain about the lack of discovery, nor ask for this alternative relief. Of note, the trial court informed the parties that they needed to provide courtesy copies of their responses, because the trial court did not have all those pleadings. Eight days after the hearing, Epicous filed a brief in support of its response to the special appearance. The very last bullet point made in that pleading asked for

18

jurisdictional discovery.

We review any limitation on jurisdictional discovery for an abuse of discretion. *Marchand*, 83 S.W.3d at 800; *Lamar v. Poncon*, 305 S.W.3d 130, 139 (Tex.App.--Houston [1st Dist.] 2009, pet. denied). A trial court abuses its discretion when it acts unreasonably or arbitrarily without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985). One guiding rule governing jurisdictional discovery is found in subsection (3) of Rule 120a. It provides that a trial court "may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." TEX.R.CIV.P. 120a(3). Here, Epicous did not file any affidavit explaining the need for additional jurisdictional discovery. This failing alone dictates the trial court did not abuse its discretion. *See Parex Resources, Inc. v. ERG Resources, LLC*, 427 S.W.3d 407, 433-34 (Tex.App.--Houston [14th Dist.] 2014), *aff'd sub nom. Searcy v. Parex Resources, Inc.*, 496 S.W.3d 58 (Tex. 2016)(trial court did not abuse discretion in denying further jurisdictional discovery based on failure to file motion to continue with affidavits prior to special appearance hearing); *see also IRN Realty Corp. v. Hernandez,* 300 S.W.3d 900, 903 (Tex.App.--Eastland 2009, no pet.)(holding trial court abused its discretion by granting motion to compel discovery and abating special appearance hearing when the plaintiff did not follow procedures for continuance under Rule 120a(3)).

We have two other concerns. First, Epicous never formally set a hearing on, nor obtained a ruling on its request for additional discovery. Obtaining a ruling, or at least a refusal to rule (supported by an objection to the refusal to rule) is an elemental requirement for preservation of error. TEX.R.APP.P. 33.1(a)(2)(A)(B); *cf. Seim v. Allstate Texas Lloyds*, 551 S.W.3d 161, 164 (Tex. 2018)(party objecting to form of affidavit in summary judgment practice must obtain ruling on objection to urge complaint on appeal); *Smith v. El Paso Veterans Transitional Living Ctr.*, 556

S.W.3d 361, 362 (Tex.App.--El Paso 2018, no pet.)(party did not preserve error for continuance motion that was not presented to, or ruled on by trial court; "A party does not meet this burden by merely filing the motion with the trial court clerk."). Nor is it clear to us what additional discovery Epicous actually needed. It claims to have been party to the interactive website where various communications and files were exchanged. Presumably, everything it claims it sent, or everything it retrieved, would be evident on its own computer. Asking Socialfix or Basecamp for its copies of the same information would be redundant. *See Moncrief Oil Intern. Inc. v. OAO Gazprom*, 414 S.W.3d 142, 158 (Tex. 2013)("Because Moncrief has not demonstrated what additional jurisdictional facts the depositions would provide, we conclude the trial court did not abuse its discretion."). For all these reasons, we overrule Issue Three.

## SUFFICIENCY OF THE AFFIDAVIT

In its last issue, Epicous contends that Teresa Tateossian lacked personal knowledge of the claim in her affidavit that Tateossian, Inc. was uninvolved in this transaction, and was not acting as an agent or representative of New Street Enterprises, Inc. (which does business as Socialfix Media). Epicous begins its argument with several uncontroversial legal precepts: (1) an affiant's statements that are not based on personal knowledge are incompetent evidence; and (2) an affiant must explain how they have personal knowledge, and not merely make the generic claim that they do. *See Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 666 (Tex. 2010)(disregarding assertion of actor's intent that was not based on personal knowledge); *Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008)(per curiam)(affidavit was legally insufficient when it failed to show how affiant could have had knowledge of events in the 1840s). Epicous then argues--because it made no objection below--that the lack of personal knowledge is a defect in substance that may be raised for the first time on appeal. *Dailey v. Albertson's, Inc.*, 83 S.W.3d 222, 226 (Tex.App.--El Paso

20

2002, no pet.)("We therefore conclude that a lack of personal knowledge, reflected in the affiant's testimony itself and not just as the lack of a formal recitation, is a defect of substance that may be raised for the first time on appeal.").

The Socialfix defendants respond by citing *Grand Prairie Independent School Dist. v. Vaughan*, 792 S.W.2d 944, 945 (Tex. 1990) and several of our sister court of appeals' decision for the proposition that a failure to object to personal knowledge and competency is a form objection that must be asserted at trial. In *Dailey*, we noted the conflict between *Vaughn* and another Texas Supreme Court decision, *City of Wilmer v. Laidlaw Waste Systems (Dallas) Inc.*, 890 S.W.2d 459, 467 (Tex.App.--Dallas 1994), *aff'd,* 904 S.W.2d 656, 660-61 (Tex. 1995)(affirming court of appeals decision that found the lack of personal knowledge or failure to specify how the affiant had personal knowledge is a defect in substance, not form, and need not be objected to at trial). We chose to follow *City of Wilmer.* 83 S.W.3d at 226. Important in *Dailey*, however, the affidavit itself established that the affiant had no personal knowledge of the event that he testified about. *Dailey,* 83 S.W.3d at 226 (store manager stated in his affidavit that he was not present at time of event). Nothing in Teresa Tateossian's affidavit shows she does not have personal knowledge of the matters contained in the affidavit.

But even if the complaint was viable without having raised it below, we conclude that Teresa Tateossian adequately explained the basis for her personal knowledge. She claimed that Tateossian, Inc. was not involved in this transaction. She would have known that because she is the President of New Street Enterprises, Inc. which was the entity that contracted with Epicous. Epicous's own petition alleges she is the person it dealt with in discussing the project prior to entering into the contract. Her knowledge of who contracted with Epicous would by exclusion provide her some basis for knowing who did not contract for the very same service. It would also

21

provide a basis for her to know who was, and who was not her agent in any transaction. Moreover, she averred that she lived with the owner of Tateossian, Inc., who also happened to be her sister. Those familial and proximity connections would provide some basis to know of Tateossian, Inc.'s involvement, or as here, lack of involvement, to the business that she runs. *Cf. Houle v. Capital One Bank (USA), N.A.*, No. 08-16-00234-CV, 2018 WL 6629698, at *5 (Tex.App.--El Paso Dec. 19, 2018, no pet. h.)(affiant who is employed by agent of bank, rather than bank itself had sufficient basis to testify to record keeping procedures of bank). We overrule Issue Four.

## CONCLUSION

We overrule Epicous's Issues One, Two, Three, and Four and affirm the order of dismissal below.


February 26, 2019

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.