

# Fourth Court of Appeals
## San Antonio, Texas

## CONCURRING OPINION

No. 04-24-00529-CV

**LITTLE & GORGEOUS, INC.** d/b/a Wild & Gorgeous Transfers and Amanda Fournier,
Appellants

v.

**WILD TRIBE SCREEN PRINTS, LLC**,
Appellee

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2023-CI-03687
Honorable Mary Lou Alvarez, Judge Presiding

Opinion by:      Lori I. Valenzuela, Justice
Concurring Opinion by: Lori Massey Brissette, Justice

Sitting:      Lori I. Valenzuela, Justice
       Lori Massey Brissette, Justice
       H. Todd McCray, Justice

Delivered and Filed: March 12, 2025

I agree with the majority's decision and find it to be based on sound foundational principles of specific personal jurisdiction developed since the United States Supreme Court's decision in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). *See, e.g.*, *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021) (citing *Int'l Shoe*). I write separately simply to highlight the need for updated Texas—and even national—jurisprudence on specific jurisdiction that recognizes

that the analog-centric rules of a physical and Web 1.0 world are becoming increasingly irrelevant in a new world of e-commerce where even websites are considered old school.

No longer are businesses simply either a brick-and-mortar storefront or a website through which they sell their wares. Today, more and more business models involve creating an interactive community via social media not just to sell products but to generate followers and brand loyalty. This case involves intentional conduct between two companies fighting for that brand loyalty, devolving into a scheme of defamation and harassment.

When looking at jurisdiction of an online business or activity, courts across the country have long relied on the "sliding scale" analysis in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, which held "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." 952 F.Supp. 1119, 1124 (W.D. Pa. 1997). The *Zippo* "sliding scale" seeks to determine if a court has a passive or interactive website. *Id.*; *see also Epicous Adventure Travel, LLC v. Tateossian, Inc.*, 573 S.W.3d 375, 387 (Tex. App.—El Paso 2019, no pet.) (citing *Zippo*); *Washington DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 737 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (same); *Wilkerson v. RSL Funding, LLC*, 388 S.W.3d 668, 676 n.6 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (same).

But the e-commerce in this case is on a completely different playing field. It does not rely on a traditional website, acting instead through interactive social media and links. The businesses do not just contract with or sell products to residents of other states. They create ongoing and committed, interactive relationships with people all over the world—customers who do not simply purchase products, but who actively post, tag, mention and "collab" in support. There is no need for marketing when they have an international, virtual army of customers supporting them. They

do not handle the creation of the product or, in many cases, even the shipment. And, sometimes, they do not even sell the product directly—only through links to third party sellers.

Notably, the social media entrepreneurs leading these businesses can grow them into multimillion-dollar endeavors with their sole assets being a Mac computer and the goodwill generated by the very brand loyalty their business model is designed to create and monetize. Even their bank account may be virtual, through an online company with no physical base and employees working remotely all over the world. These businesses live in a world where state lines are irrelevant, and geography poses no obstacle.

As recognized by the Fifth Circuit, "[a]lthough interactivity along the *Zippo* sliding scale can be an important factor in an internet-based personal jurisdiction analysis because it can provide evidence of purposeful conduct, internet-based jurisdictional claims must continue to be evaluated on a case-by-case basis, focusing on the nature and quality of online and offline contacts to demonstrate the requisite purposeful conduct that establishes personal jurisdiction." *Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 227 n.7 (5th Cir. 2012) (citations omitted).

The danger in simply staying true to the foundational cases on specific jurisdiction is we may continue to apply archaic, analog requirements in an increasingly virtual world. Whether a business has a physical presence in a state or owns or operates servers in a state, even whether it advertises in a state, is completely irrelevant in today's world of online businesses where one digital entrepreneur can virtually take down another with the simple press of a button. In that situation, does a defendant's home state really have more of an interest in the litigation than a plaintiff's home state has in protecting its citizens from the far-reaching and financially significant negative impacts of tortious online activity? *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,

592 U.S. 351 (2021) (recognizing limits on specific jurisdiction "ensure that States with 'little legitimate interest' in a suit" cannot wrest that suit from "States more affected by the controversy" (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 263 (2017)).

Many courts around the country, in cases involving intentional torts such as defamation, rely on the *Calder* "effects" test which looks to whether the defendant's actions (1) were intentional, (2) were aimed at a forum state, and (3) caused harm which defendant could reasonably assume would be suffered in the forum state. *See Calder v. Jones*, 465 U.S. 783, 788–89 (1984). For example, in *Groo v. Mont. Eleventh Jud. Dist. Ct.*, the court affirmed specific jurisdiction where online activity was directed to Montana residents and those under contract with a Montana plaintiff to negatively impact business which was to take place in Montana. 537 P.3d 111, 121 (Mont. 2023). Likewise, in *Zehia v. Super. Ct.*, the court affirmed specific jurisdiction where defamatory statements were sent via social media to California residents with the aim of interfering with a California plaintiff's relationships. 45 Cal. App. 5th 543, 546–47, 553 (Cal. Ct. App. 2020). The Fifth Circuit, too, has applied this reasoning when declining personal jurisdiction. *See Revell v. Lidov*, 317 F.3d 467, 472–75 (5th Cir. 2002) (no specific jurisdiction was conferred where activity at issue and harm suffered was not directly aimed at Texas, but to "entire world"); *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 318, 321, 326 (5th Cir. 2021) (refusing personal jurisdiction because the article, plaintiff's activities, and harm were not focused on Texas).

The closest fact scenario we have to the present case in a Texas Supreme Court opinion is in *TV Azteca v. Ruiz*, 490 S.W.3d 29 (Tex. 2016). There, the court conferred jurisdiction over claims arising from a broadcast that originated in Mexico but impacted Texas residents. *Id*. at 34-35. The court relied on the fact that, while the broadcast was international, it was intended to be viewed in

Texas, the harm occurred in Texas, and there was further evidence the broadcaster "exploited the Texas market to capitalize on the broadcasts." *Id.* at 34.

But, two years after *TV Azteca*, the Texas Supreme Court distanced itself from the *Calder* "effects" test, making it clear *Calder* does not supplant the traditional minimum contacts analysis and that the appropriate factors to consider are instead: (1) the defendant's contacts with the forum, (2) whether the contacts are purposeful and not random, fortuitous or attenuated, and (3) whether the defendant sought some benefit, profit or advantage by availing itself of the jurisdiction. *Old Republic National Title Ins. Co. v. Bell*, 549 S.W.3d 550, 564-65 and n.5 (Tex. 2018) (*citing Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 151 (Tex. 2013)). It also reaffirmed that the plaintiff's claims must derive from the defendant's purposeful minimum contacts. *Old Republic*, 549 S.W.3d at 560 (*citing Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007)). It further stated, "[W]e have explicitly rejected an approach to specific jurisdiction that turns upon where a defendant "directed a tort" rather than on the defendant's contacts." *Old Republic*, 549 S.W.3d at 565 (*citing Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790–92 (Tex. 2005)).

Even after *Old Republic*, though, the proper analysis under current law still requires courts to look to whether the defendant intended to direct its contacts to the forum state as opposed to a national audience. Here, as pointed out by the majority, 15% of the Little & Gorgeous customer base and 10% of its orders are from Texas. To cultivate that following, it creates and sells Texas-themed products and engages with its customers, including those from Texas, in online conversations. In fact, it depended on its army of geographically diverse loyalists to spread the word that, in the world of two competing businesses, Little & Gorgeous was in the right and Wild Tribe was in the wrong. And, it used not just its online presence but its relationships to allegedly

intentionally defame Wild Tribe, a Texas company, with the specific intent to impact its business. But, as the majority points out, nothing in the record demonstrates Little & Gorgeous intended their efforts to be directed at anything more specific than their broad customer base, which goes well beyond Texas, or that the harm it allegedly inflicted was specific to Wild Tribe's Texas customers versus Wild Tribe's own broad geographic base.

But, where a defendant in this new virtual world of social e-commerce can so easily and without any expense go worldwide in its efforts—where its actions target everywhere—does it really target nowhere? What if Little & Gorgeous wasn't being managed internationally from a dining room table in Canada but from a Sprinter Van moving from state to state? Which state, then, would be an appropriate forum?

We may be viewing jurisdictional questions and even litigation of these types of business disputes in such an antiquated way that we are completely missing the point of the online business world where physical geography is irrelevant. Where a person can conduct a multi-million-dollar business in every state from their living room, why is it that we cannot litigate a case involving their conduct in the same manner? And, if we considered that possibility, would that change our jurisdictional analysis, specifically about whether the exercise of specific jurisdiction by Texas would "offend the traditional notions of fair play and substantial justice" discussed eighty years ago in *International Shoe*? *See* 326 U.S. at 316. Only the Texas Legislature and the Texas Supreme Court can tell us.

For all of the foregoing reasons, I concur in the majority's decision because I understand our role as an intermediate appellate court is to simply apply the law as it is set out by statute and the Texas Supreme Court.

Lori Massey Brissette, Justice