COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| PUBLICACIONES E. IMPRESOS PASO DEL NORTE, S. DE R.L. DE C.V. AND PUBLICACIONES PASO DEL NORTE, S.A. DE C.V., | § | No. 08-22-00044-CV |
| | § | Appeal from the |
| | § | County Court at Law No. 3 |
| Appellants, | § | |
| | § | of El Paso County, Texas |
| v. | § | (TC# 2020-DCV-0919) |
| JAVIER CORRAL JURADO, | | |
| Appellee. | | |

## **O P I N I O N**

This interlocutory appeal arises from a trial court's denial of a special appearance.[1] The underlying case involves Javier Corral Jurado's (Corral's) lawsuit against Publicaciones E. Impresos Paso del Norte, S. de R.L. de C.V. (El Diario de Juarez), Paso del Norte Publishing, Inc. (El Diario de El Paso), and Publicaciones Paso del Norte, S.A. de C.V. (Diario Digital). Corral sued for defamation, libel, and slander arising from the publication in El Paso County of several online and print newspaper articles related to his property and accusing him of criminal acts.

---

[1] This appeal is related to a mandamus proceeding also filed in this Court, case number 08-22-00099-CV, which involves the trial court's denial of a motion to dismiss for forum non conveniens. The cases share the same factual and procedural background, as well as the same clerk's record.

Appellants, El Diario de Juarez and Diario Digital,[2] filed a special appearance arguing the trial court lacked personal jurisdiction over them. The trial court denied both special appearances. We affirm the trial court's order.

### Factual and Procedural Background

Corral served as Governor of the State of Chihuahua, Mexico from 2016 through 2021. His suit alleged the defendants initiated a campaign to defame, slander, and injure his reputation after his administration refused an attempted extortion in exchange for publicity by Osvaldo Rodriguez Borunda, an owner and director of the defendant companies. Corral claims beginning in September 2019, the defendants published a series of online and print articles falsely accusing him of allegedly "invading" the property next to his home, claiming he did not legally purchase the property, and stating purportedly official documents revealed he did not in fact own the property. In response, Corral states he appeared on television to explain how he purchased the property legally, disclosing the sellers' identity and the purchase contract. However, he contends the defendants disregarded this information and continued publishing articles accusing him of misdeeds surrounding the property's purchase and renovation. Before filing his lawsuit, Corral attempted to resolve the issues with the defendants through the Texas Defamation Mitigation Act, *see* Texas Civil Practice and Remedies Code Chapter 73, but the defendants refused to correct, clarify, or retract their publications and instead continued to publish articles about the property.

Corral contends he filed suit in Texas state court because: (1) he has no other available or adequate forum; (2) the purportedly defamatory articles were published in El Paso County; and (3) the court can exercise personal jurisdiction over all defendants. He further contends these

---

[2] El Diario de El Paso is not a party to this appeal.

publications subjected him to "public hatred, low approval ratings, contempt, ridicule, pecuniary injury, and actual damages," and damaged his reputation in the regional community of El Paso, in which El Diario de El Paso and El Diario de Juarez have a circulation of over 20,000.

El Diario de Juarez and Diario Digital filed special appearances making similar legal arguments. The special appearances contend the trial court does not have jurisdiction over either party because they are Mexican corporations, have their principal place of business in Mexico, are not registered to do business in Texas, and conduct no business in Texas. El Diario de Juarez and Diario Digital also state they do not maintain a place of business in Texas, nor do they have any employees or agents within Texas. They allege neither corporation has continuous or systemic contacts with the state of Texas, and Corral's claims do not arise from any contacts between the corporations and Texas, such that neither entity had any basis to reasonably anticipate being haled into Texas court regarding Corral's claims. El Diario de Juarez and Diario Digital further allege Corral's pleadings fail to state sufficient jurisdictional allegations to bring either corporation within the Texas long-arm statute, do not plead sufficient minimum contacts with Texas, and do not establish either corporation's purposeful availment of the privilege of conducting business activities in Texas.

The parties engaged in jurisdictional discovery for over a year, during which the trial court resolved related discovery disputes. Corral then responded to the special appearances, contending evidence shows El Diario de Juarez and Diario Digital have an office in Texas; an El Paso phone number; shareholders, officers, and directors residing in Texas; employed Texas residents; opened a Texas bank account; newspaper subscribers in El Paso County; received payments from Texas residents from the sale of newspapers in El Paso County; entered into contracts with Texas residents or through El Diario de El Paso; sold, circulated, and distributed its newspaper for

decades in El Paso County; published advertisements of Texas businesses and residents in its newspapers targeted to Texas readers; filed and defended lawsuits in El Paso County; been previously authorized to do business in Texas; and proclaimed themselves as "The" Spanish-language newspaper in El Paso and a leader in journalism in Southwest Texas.[3]

El Diario de Juarez and Diario Digital filed a reply, in which they agreed El Diario de Juarez (1) had shareholders, officers, and directors residing in Texas but contended this factor did not support the exercise of personal jurisdiction, and (2) held one Texas bank account. However, El Diario de Juarez took issue with Corral's other jurisdictional allegations, contending since the formation of El Diario de El Paso in 2005, El Diario de Juarez has not, among other things, held an office in Texas, distributed its newspaper in El Paso, or filed or defended lawsuits in El Paso County. El Diario de Juarez and Diario Digital also maintained their corporate structure did not support Corral's treatment of the two entities as one for jurisdictional-analysis purposes.

The trial court held a two-day hearing on the special appearances and denied both. It then entered sixty-six findings of fact and nineteen conclusions of law consistent with its judgment, finding in part:

- Four shareholders of El Diario de Juarez are residents of El Paso County. Of those four shareholders, one is also a director and officer, and another is an officer and employee of El Diario de Juarez.

- The articles at issue in Corral's suit were circulated, distributed, and sold in El Paso County, Texas, and if they are found to be false, would constitute a tort causing harm to Corral in Texas.

- In 1999, El Diario de Juarez changed its name and banner to only "El Diario" to "better serve the readers in the State of Chihuahua, Mexico and El Paso County, Texas."

---

[3] In his response to the special appearances, Corral made the same arguments as to both El Diario de Juarez and Diario Digital, a tactic he has since abandoned.

- "El Diario de Juarez considers itself '*The*' Spanish-language newspaper in El Paso County by having circulated thousands of daily copies with El Diario de El Paso for several years."

- El Diario de Juarez and Diario Digital have intentionally targeted residents of the state of Texas. As a way of doing so, El Diario de Juarez is circulated and distributed in El Paso County. El Diario de Juarez is sold collectively as one combined newspaper with El Diario de El Paso such that El Diario de Juarez reaches the same subscribers and readers of El Diario de El Paso in El Paso County.

- El Diario de Juarez has an office in El Paso County, which it shares with El Diario de Juarez, as well as several El Paso telephone numbers.

- The El Paso office acts as "an advertising agent" for El Diario de Juarez and "creates a regular channel of communication between El Paso residents and businesses who seek to publish advertisements or classified ads in El Diario de Juarez."

- Diario Digital refers online subscribers in El Paso County to El Diario de Juarez and allows El Paso residents to subscribe online to receive a copy of El Diario de Juarez in El Paso County.

- El Diario de Juarez owns the domain name diariousa.com, which redirects to the domain name used by El Diario de El Paso and Diario Digital, and ElDiarioUSA.com, which includes links to El Diario de Juarez and El Diario de El Paso.

- El Diario de Juarez also targets the El Paso market by publishing, circulating, and marketing the magazine ¡VAMOS!, which is included as an insert in El Diario de El Paso and El Diario de Juarez, in El Paso County. ¡VAMOS! regularly publishes advertisements of El Paso businesses and institutions, as well as concerts and social events occurring in El Paso County venues.

- El Diario de Juarez and El Diario de El Paso executed a services agreement on January 1, 2018, which allows the two companies to contract on each other's behalf for any "advertising, agreements, spots, panels, events, photos, inserts and any products that may be sold" by either newspaper, both online and in print.In its contracts with El Paso County businesses and institutions, El Diario de El Paso states it is doing business as El Diario de Juarez and Diario Digital in the state of Texas.

- In consideration for the publication of advertisements of El Paso County business and institutions, El Diario de Juarez earns seventy percent of sales revenue, which it receives through deposits or transfers to its Texas bank account, and El Diario de El Paso earns the remaining thirty percent.

- El Diario de Juarez and Diario Digital derive significant revenue through "the purposeful and intentional exploitation of the El Paso County market."

- "El Diario de Juarez and Diario Digital have purposefully availed themselves of the laws, benefits, privileges, and protection of conducting activities in Texas, such that they could reasonably anticipate being haled into court in this State."

- Accordingly, the court "has personal jurisdiction over El Diario de Juarez and Diario Digital because they have sufficient minimum contacts and have purposefully availed themselves of the laws, benefits, and privileges of the State of Texas."El Diario de Juarez and Diario Digital "intentionally targeted the State of Texas with their publications; advertised established channels of regular communication to customers in the State of Texas; designed their products for the market in the State of Texas; established channels for providing advice, referrals, or communication to customers in the State of Texas; and marketed, circulated, and distributed their products through El Diario de El Paso, who agreed to serve as their agent in the State of Texas."

- "The Court's exercise of specific personal jurisdiction over El Diario de Juarez and Diario Digital will not offend traditional notions of fair play and substantial justice."

This appeal followed.[4]

### *Standard of Review*

We review a trial court's denial of a special appearance de novo. *Fed. Corp., Inc. v. Truhlar*, 632 S.W.3d 697, 716 (Tex. App.—El Paso 2021, pet. denied). Whether a court has personal jurisdiction over a defendant is legal question. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). However, a trial court considering a jurisdictional challenge "frequently must resolve questions of fact before deciding the jurisdiction question." *Id.*

When, as here, the trial court issues findings of fact and conclusions of law, an appellant may challenge the findings of fact on legal- and factual-sufficiency grounds. *Fed. Corp.*, 632

---

[4] El Diario de Juarez and Diario Digital filed a motion to dismiss for forum non conveniens, which the trial court denied and is more fully detailed in the related mandamus proceeding before this Court, case number 08- 22- 00099- CV. El Diario de El Paso did not join that motion at the trial court level.

S.W.3d at 716. Under a factual-sufficiency challenge, we examine the entire record and consider the evidence in favor of, and contrary to, the challenged finding; however, we may set aside a finding only if that finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *Id.* (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). Under a legal-sufficiency challenge, the record must contain more than a scintilla of evidence to support the questioned finding; if it does, the no-evidence point fails. *Id.* at 716–17 (citing *BMC Software*, 83 S.W.3d at 795).

### *Applicable Law*

"A court must have both subject matter jurisdiction over a case and personal jurisdiction over the parties to issue a binding judgment." *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 7–8 (Tex. 2021). A Texas court may exercise personal jurisdiction over a nonresident "when two criteria are satisfied: (1) the Texas long arm statute must grant jurisdiction; and (2) the exercise of jurisdiction must comport with federal and state constitutional guarantees of due process." *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016) (citations omitted).

"The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute." *BMC Software*, 83 S.W.3d at 793. This notice-pleading requirement is "minimal" and "can be satisfied with an allegation that the nonresident defendant is doing business in Texas or committed tortious acts in Texas." *Gaddy v. Fenenbock*, 652 S.W.3d 860, 871 (Tex. App.—El Paso 2022, no pet.) (citation omitted). Once the plaintiff meets this initial burden, the burden shifts to the nonresident defendant to negate all jurisdictional bases alleged by the plaintiff, which he can do on either a factual or legal basis. *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658–59 (Tex. 2010).

The Texas long-arm statute authorizes the exercise of jurisdiction over a nonresident defendant doing business in Texas. TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041–.045. A nonresident "does business in this state if the nonresident . . . contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state . . . [or] commits a tort in whole or in part in this state[.]" *Id.* § 17.042. The statute's "broad doing-business language allows [it] to reach as far as the federal constitutional requirements of due process will allow." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007) (internal quotation marks omitted).

The exercise of jurisdiction meets federal due-process standards "only if the defendant has established 'minimum contacts' with the forum state such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Luciano*, 625 S.W.3d at 8 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Courts analyze whether the due-process standard is met from two perspectives: general jurisdiction and specific jurisdiction." *Southwire Co., LLC v. Sparks*, No. 02-21-00126-CV, 2021 WL 5368692, at *4 (Tex. App.—Fort Worth Nov. 18, 2021, no pet.) (mem. op.) (citing *Luciano*, 625 S.W.3d at 8). "A court has general jurisdiction over a nonresident defendant whose 'affiliations with the State are so []continuous and systematic[] as to render [it] essentially at home in the forum State.'" *Luciano*, 625 S.W.3d at 8 (quoting *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016)). General jurisdiction "involves a court's ability to exercise jurisdiction over a nonresident defendant based on any claim, including claims unrelated to the defendant's contacts with the state." *M&F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co. Inc.*, 512 S.W.3d 878, 885 (Tex. 2017). Most corporate defendants will be subject to general

jurisdiction only in its place of incorporation and principal place of business.[5] *BNSF Ry. Co. v. Tyrrell*, 581 US 402, 413 (2017). However, "in exceptional cases, 'a corporate defendant's operations in another forum may be so substantial and of such a nature as to render the corporation at home in that State.'" *PetroSaudi Oil Servs. Ltd. v. Hartley*, 617 S.W.3d 116, 139 (Tex. App.— Houston [1st Dist.] 2020, no pet.) (quoting *BNSF Ry. Co.*, 581 US at 413). The general-jurisdiction inquiry requires a "more demanding minimum contacts analysis" with a "substantially higher" threshold than that of a specific-jurisdiction inquiry. *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 168 (Tex. 2007) (citations omitted).

"By contrast, specific jurisdiction 'covers defendants less intimately connected with a State, but only as to a narrower class of claims.'" *M&F Worldwide*, 512 S.W.3d at 885 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021)). "Specific jurisdiction is not as exacting as general jurisdiction in that the contacts may be more sporadic or isolated so long as the cause of action arises out of those contacts." *Gaddy*, 652 S.W.3d at 871 (citing *Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010)). With specific jurisdiction, a minimum-contacts showing requires two things: (1) that "the defendant purposefully avails itself of the privilege of conducting activities in the forum state[;]" and (2) "the suit 'arise[s] out of or relate[s] to the defendant's contacts with the forum[.]'" *Luciano*, 625 S.W.3d at 8–9.

The first prong of the specific-jurisdiction inquiry is purposeful availment. *Id*. To determine whether a nonresident defendant has purposefully availed himself of the privilege of conducting activities in Texas, courts consider three factors. *E.g.*, *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 559 (Tex. 2018). "First, it is only the defendant's contacts with the forum

---

[5] A corporation's "principal place of business" is where its officers direct, control, and coordinate the corporation's activities. *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010).

that count: purposeful availment 'ensures that a defendant will not be haled into a jurisdiction solely as a result of . . . the 'unilateral activity of another party or a third person.'" *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Second, "the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated." *Moki Mac*, 221 S.W.3d at 575. Nonresident defendants "who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to the jurisdiction of the latter in suits based on their activities." *Michiana*, 168 S.W.3d at 785 (quoting *Burger King*, 471 U.S. at 473). Third, "the defendant must seek some benefit, advantage, or profit by 'availing' itself of the jurisdiction." *Moki Mac*, 221 S.W.3d at 575. That is because "[j]urisdiction is premised on notions of implied consent—that by invoking the benefits and protections of a forum's laws, a nonresident consents to suit there." *Michiana*, 168 S.W.3d at 785 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). "By contrast, a nonresident may purposefully avoid a particular jurisdiction by structuring its transactions so as neither to profit from the forum's laws nor be subject to its jurisdiction." *Id.* (citing *BurgerKing*, 471 U.S. at 473). "In conducting this analysis, we assess 'the quality and nature of the contacts, not the quantity.'" *TV Azteca*, 490 S.W.3d at 38 (quoting *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 414 S.W.3d 142, 151 (Tex. 2013)).

The second prong of the specific-jurisdiction inquiry is relatedness. Even if courts find purposeful availment, specific jurisdiction exists only "when the cause of action arises from or is related to purposeful activities in the state." *Moncrief Oil*, 414 S.W.3d at 150. For that reason, courts analyze a nonresident defendant's "jurisdictional contacts on a claim-by-claim basis" unless

"all claims arise from the same forum contacts."[6] *Id.* at 150–51. The relatedness requirement "lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum." *Moki Mac*, 221 S.W.3d at 579.

*Analysis*

On appeal, El Diario de Juarez and Diario Digital raise three issues, which can be restated as a comprehensive challenge to the trial court's conclusion that it may exercise personal jurisdiction over each of them. In other words, El Diario de Juarez and Diario Digital contend the trial court should not have denied their special appearances because they have no minimum contacts with Texas, as they have not purposefully availed themselves of conducting business in Texas, and the exercise of jurisdiction over them would not comport with traditional notions of fair play and substantial justice.[7]

**A. The trial court properly found El Diario de Juarez established minimum contacts with the State of Texas.**

*1. Corral pled sufficient jurisdictional allegations as to El Diario de Juarez.*

Because the burden in a special appearance begins with the plaintiff, we first look to Corral's jurisdictional allegations to determine whether he met the initial burden to bring El Diario de Juarez within the reach of Texas's long-arm statute. *See BMC Software*, 83 S.W.3d at 793. In the live pleading, Corral alleges El Diario de Juarez does business in Texas, committed a tort in Texas, and contracted with a Texas resident to perform a contract in whole or in part in Texas. Specifically, Corral alleges El Diario de Juarez committed a tort in Texas by publishing,

---

[6] Here, Corral's claims arise from the same set of forum contacts, so we need not assess El Diario de Juarez and Diario Digital's contacts on a claim-by-claim basis.

[7] El Diario de Juarez and Diario Digital make different arguments as to their purported lack of minimum contacts with the state of Texas; however, they collectively argue the exercise of jurisdiction over them would offend traditional notions of fair play and substantial justice. We therefore consider the minimum-contacts analysis separately for each appellant and the fair-play-and-substantial-justice analysis collectively.

circulating, distributing, selling, republishing, and/or cross-referencing the purportedly defamatory articles about him in El Paso County, from which his cause of action arises. Further, Corral states El Diario de Juarez has entered into contracts with El Diario de El Paso, a Texas resident corporation, to sell, circulate, distribute, and market El Diario de Juarez in El Paso County. Though Corral admits El Diario de Juarez is a foreign corporation organized under the laws of Mexico, he alleges its contacts with the state of Texas are "so continuous and systematic as to render it essentially at home in this forum."

These jurisdictional allegations collectively satisfy the pleading requirements to bring El Diario de Juarez within the reach of the Texas long-arm statute and shift the burden to El Diario de Juarez to negate all possible bases for jurisdiction. *See Kelly*, 301 S.W.3d at 658.

### 2. *The trial court's findings of fact as to El Diario de Juarez and the evidence in this case*

As stated above, when a trial court makes findings of fact in a special appearance, we may set aside a factual finding "only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust." *Fed. Corp.*, 632 S.W.3d at 716 (citing *Cain*, 709 S.W.2d at 176). A no-evidence challenge will be sustained only when: (1) the record reveals a complete absence of evidence of a vital fact; (2) we are barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). We review the evidence in a light most favorable to the challenged finding, crediting any favorable evidence so long as a reasonable factfinder could do the same and disregarding any contrary evidence unless a reasonable factfinding could not. *Id.* at 821–22, 827.

El Diario de Juarez takes issue with several of the trial court's findings of fact related to the selling, marketing, circulation, distribution, promotion, and advertising of publications in El Paso, whether it targeted Texas residents, and whether it does business in Texas.[8] While its contentions may conflict with Corral's allegations and the trial court's findings of fact, "it was the trial court's function to weigh, accept, and disregard the evidence in arriving at its factual findings." *Parex Res., Inc. v. ERG Res.*, LLC, 427 S.W.3d 407, 438 (Tex. App.—Houston [14th Dist.] 2014), *aff'd sub nom. Searcy v. Parex Res., Inc.*, 496 S.W.3d 58 (Tex. 2016). Mindful of the no-evidence standard, we consider each contested finding of fact in turn:

- #8: El Diario de Juarez prints the El Diario de El Paso newspaper and receives financial compensation from El Diario de El Paso for those printing services.

Record evidence supports this finding. Specifically, at the hearing on the special appearance, Osvaldo Rodriguez-Jimenez, the vice president of El Diario de El Paso and commercial director of El Diario de Juarez, testified on direct examination that "El Diario de El Paso pays El Diario de Juarez to print the newspaper."

El Diario de Juarez's no-evidence challenge as to finding of fact #8 fails.

- #9: El Diario de Juarez sells its newspaper to El Diario de El Paso for circulation and distribution to residents, businesses, and institutions in El Paso County, Texas.

The record supports this finding. During Mr. Rodriguez-Jimenez's cross-examination, he testified El Diario de Juarez is sold and distributed in El Paso as an insert to El Diario de El Paso. In his words, "[w]herever El Diaro de El Paso is sold and distributed, El Diario de Juarez is inside." In El Paso, the two publications are sold collectively as one newspaper. Though El Diario de Juarez is not individually sold in El Paso, as it is in Ciudad Juarez, El Diario de El Paso pays El Diario

---

[8] Specifically, El Diario de Juarez challenges findings of fact 8, 9, 11, 18, 23–31, 36–39, 42, 43, 55, and 61–65. El Diario de Juarez also challenges conclusions of law 13–17.

13

de Juarez for the publication, then circulates and distributes it as an insert within El Diario de El Paso in El Paso County.

El Diario de Juarez's no-evidence challenge as to finding of fact #9 therefore fails.

- #11: A long-time resident of El Paso County, Mr. Rodriguez Borunda has historically had oversight and control of the journalistic output in all publications. He has previously acknowledged that the El Diario de Juarez newspaper has circulated in El Paso County, Texas.

Record evidence supports part of this finding of fact. Mr. Rodriguez Borunda admits to being an El Paso resident, though there is no record evidence detailing how long he has been one. He also stated in an affidavit in unrelated past litigation that El Diario de Juarez is circulated in Juarez and El Paso. One of the many exhibits admitted by the trial court in connection with the special appearance hearing includes an article about the history of El Diario de Juarez, which states "[u]nder the direction of Osvaldo Rodriguez Borunda, El Diario has become the newspaper with the most circulation in the state of Chihuahua and the fourth most important in Mexico"; however, we have not found nor has Corral pointed us to record evidence supporting the assertion Mr. Rodriguez Borunda "has historically had oversight and control of the journalistic output in all publications."

El Diario de Juarez's no-evidence challenge as to finding of fact #11 thus succeeds in part and fails in part.

- #18: The Publications were circulated, distributed, and sold in El Paso County, Texas, which, if false, constitute a tort that caused Corral to suffer harm in the State of Texas.

Without engaging in the legal merits (*i.e.*, whether the allegedly defamatory publications constituted a tort that caused Corral to suffer harm in the state of Texas), this finding of fact is supported by record evidence. On cross-examination at the special appearance hearing, Mr. Rodriguez-Jimenez testified each article at issue in this suit reached El Paso readers.

14

El Diario de Juarez's no-evidence challenge as to finding of fact #18 fails.

- #23: In 1982, the El Diario de Juarez newspaper entered into the El Paso business community by opening a small sales and circulation office. Indeed, in its reply to the special appearance, El Diario de Juarez admitted that "PEI [El Diario de Juarez] sold its newspapers in El Paso and had a sales office and employees in order to accomplish that goal."

Record evidence supports this finding of fact. An exhibit admitted as part of the special appearance hearing describing the history of El Diario substantiates the first sentence. The second sentence is an accurate quotation from El Diario de Juarez's reply in support of its special appearance, though it relates specifically to the timeframe before April 2005, when El Diario de El Paso was formed.

El Diario de Juarez's no-evidence challenge as to finding of fact #23 fails.

- #24: In 1999, the El Diario de Juarez newspaper changed its name and banner to only "El Diario" to better serve the readers in the State of Chihuahua, Mexico and El Paso County, Texas.

Record evidence supports this finding of fact, namely an exhibit admitted as part of the special appearance hearing describing the history of El Diario.

El Diario de Juarez's no-evidence challenge as to finding of fact #24 fails.

- #25: El Diario de Juarez considers itself as "The" Spanish-language newspaper in El Paso County by having circulated thousands of daily copies with El Diario de El Paso for several years.

Record evidence supports this finding of fact, namely an exhibit admitted as part of the special appearance hearing describing the history of El Diario.

El Diario de Juarez's no-evidence challenge as to finding of fact #25 fails.

- #26: El Diario de Juarez is a self-proclaimed leader in journalism in Southwest Texas with newspapers widely circulated in El Paso County, Texas.

Record evidence supports this finding of fact, namely an exhibit admitted as part of the special appearance hearing describing the founding of El Diario.

El Diario de Juarez's no-evidence challenge as to finding of fact #26 fails.

- #27: El Diario de Juarez and Diario Digital design their print and online newspapers for the market in El Paso County, Texas.

Viewing the evidence in a light most favorable to the challenged finding, as we must, we conclude there is sufficient record evidence to enable a reasonable factfinder to reach this conclusion. During the two-day hearing on the special appearances, the trial court heard testimony from Mr. Rodriguez-Jimenez, in which he described El Diario de Juarez's practices for selling advertising and classified ads. Mr. Rodriguez-Jimenez testified that El Diario de Juarez regularly publishes advertisements and classified ads placed by El Paso-based businesses and individuals, and exhibits admitted at the hearing reflect payments to El Diario de Juarez by El Pasoans for the same. Further, exhibits show El Diario de Juarez publishes articles and advertisements about newsworthy events in El Paso. Record evidence, including Mr. Rodriguez-Jimenez's testimony, also supports the finding that these advertisements, classified ads, and articles are published electronically by Diario Digital.

In sum, the trial court could have come to this conclusion based on the collective evidence and testimony presented. We find the trial court's finding of fact #27 is not so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust, and El Diario de Juarez's no-evidence challenge as to finding of fact #27 therefore fails.

- #28: El Diario de Juarez, El Diario de El Paso, and Diario Digital strategically target Spanish speakers and Mexican nationals who reside in El Paso County, Texas and have a deep-rooted interest in the political, cultural, and social affairs in Chihuahua, Mexico.

To the extent this finding of fact overlaps with finding of fact #27, we find sufficient record evidence supports this finding. However, there is no record evidence to support the finding as it relates to "Spanish speakers and Mexican nationals who reside in El Paso County, Texas and have

16

a deep-rooted interest in the political, cultural, and social affairs in Chihuahua, Mexico." That language is pulled directly from Corral's pleadings, and Corral has not pointed us to, nor have we found, record evidence that otherwise supports this finding.[9]

El Diario de Juarez's no-evidence challenge as to finding of fact #28 succeeds in part.

- #29: El Diario de Juarez and Diario Digital have intentionally targeted residents of the State of Texas. Most of the El Paso residents targeted by El Diario de Juarez and Diario Digital are Hispanic, Mexican nationals, or have U.S.-Mexican dual citizenship who vote in Mexican elections.

Again, to the extent this finding of fact overlaps with finding of fact #27, we find sufficient record evidence supports this finding. However, there is no record evidence to support the second sentence of this finding, *i.e.*, "Most of the El Paso residents targeted by El Diario de Juarez and Diario Digital are Hispanic, Mexican nationals, or have U.S.-Mexican dual citizenship who vote in Mexican elections." That language is also pulled from Corral's pleadings, and Corral has not pointed us to, nor have we found, record evidence that otherwise supports this finding.

El Diario de Juarez's no-evidence challenge as to finding of fact #29 succeeds in part.

- #30: As a way of purposefully and intentionally targeting residents of El Paso County, Texas, El Diario de Juarez is circulated and distributed in El Paso County, Texas.

Record evidence supports part of this finding of fact—that El Diario de Juarez is circulated and distributed in El Paso County—for the same reasons described in finding of fact #9.

---

[9] One of Corral's exhibits admitted by the trial court is a screenshot from a diariousa.com website that describes the circulation of El Diario de El Paso, El Diario de Juarez, and El Diario de Chihuahua. As to El Diario de El Paso, it states it "[c]irculates 20,466 daily copies and 21,362 [S]unday copies (100,000 readers) throughout El Paso to reach Mexican nationals and Hispanics living in El Paso." As to El Diario de Juarez, it states it "[c]irculates in Ciudad Juarez, Nuevo Casas Grandes . . ., El Paso, Texas, and Las Cruces, New Mexico," and has a circulation of "70,296 daily copies and 76,277 on Sundays." However, this evidence, without more, does not substantiate the finding of fact as written.

17

Viewing the evidence in a light most favorable to the challenged finding, we conclude there is sufficient record evidence to enable a reasonable factfinder to reach the conclusion that El Diario de Juarez circulates and distributes its newspaper in El Paso County as a way of purposefully and intentionally targeting El Paso residents. The record contains evidence of El Diario de Juarez's sales revenue and circulation data. In combination with the record evidence which supports finding of fact #27, we conclude the trial court could have come to this conclusion based on the collective evidence and testimony presented. We thus find the trial court's finding of fact #30 is not so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust, and El Diario de Juarez's no-evidence challenge as to finding of fact #30 therefore fails.

- #31: For one U.S. dollar, El Paso residents can purchase El Diario de El Paso and El Diario de Juarez newspapers, which are collectively circulated, distributed, and sold as one newspaper.

The record supports this finding for the same reasons described in finding of fact #9. El Diario de Juarez's no-evidence challenge as to finding of fact #31 fails.

- #36: Because they are circulated, distributed, and sold as one collective newspaper, the daily joint circulation of El Diario de Juarez and El Diario de El Paso in El Paso County is 20,899 Monday through Saturday and 24,567 on Sundays, which translates to about one million newspaper copies sold per year in El Paso County, Texas.

Record evidence supports this finding, namely a May 2021 letter from Mr. Rodriguez Borunda admitted as a special appearance hearing exhibit. El Diario de Juarez's no-evidence challenge as to finding of fact #36 fails.

- #37: El Diario de Juarez has an office in El Paso County, Texas, which it shares with El Diario de El Paso.

The parties still dispute whether El Diario de Juarez currently has an office in El Paso or whether it had an El Paso office solely before April 2005. However, more than a mere scintilla of record evidence supports this finding of fact. Corral introduced into evidence an excerpt from El

Diario de Juarez stating, next to its logo, it has "Offices in El Paso, Tx." at "1801 Texas [Ave.,]" with zip code 79901, and listing phone numbers with El Paso area codes for reception, advertising, and the editorial office. Corral also introduced an excerpt from El Diario de Juarez's classified section stating its address in El Paso is "1801 Texas Ave. El Paso, Tx. 79901," which Mr. Rodriguez-Jimenez affirmed at the special appearance hearing.

Accordingly, we find the evidence legally and factually sufficient to support finding of fact #37.

- #38: As published in its own newspaper, El Diario de Juarez notes that it has an office at 1801 Texas Avenue in El Paso County and has several telephone numbers for its receptionist, newspaper editorial staff, and advertising department with a 915 area code, which is an area code assigned to El Paso County, Texas.

The record supports this finding for the same reasons described in finding of fact #37. El Diario de Juarez's no-evidence challenge as to finding of fact #38 fails.

- #39: The El Paso office acts as an advertising agent for El Diario de Juarez. It creates a regular channel of communication between El Paso residents and businesses who seek to publish advertisements or classified ads in El Diario de Juarez.

Record evidence supports this finding, as the trial court admitted into evidence a service agreement between El Diario de El Paso and El Diario de Juarez. The agreement provides El Diario de El Paso and El Diario de Juarez can contract on each other's behalf for "advertising agreements, spots, panels, events, photos, inserts and any products that may be sold" by either entity. Mr. Rodriguez-Jimenez also agreed at the special appearance hearing that El Diario de El Paso serves as an agent on behalf of El Diario de Juarez to sign contracts in the state of Texas.

Further, Mr. Rodriguez-Jimenez testified to the process by which El Paso residents and business can have an advertisement or classified ad published in El Diario de Juarez. He stated any

El Paso entity or individual interested in advertising in El Diario de Juarez can contact an El Paso sales agent from El Diario de El Paso to arrange for an ad to be printed in El Diario de Juarez.

Accordingly, we find the evidence legally and factually sufficient to support finding of fact #39.

- #42: El Diario de Juarez and Diario Digital publish the classified ads of El Paso residents and businesses.

Mr. Rodriguez-Jimenez's testimony during cross-examination at the special appearance hearing acknowledges this assertion and supports this finding. El Diario de Juarez's no-evidence challenge as to finding of fact #42 fails.

- #43: El Diario de Juarez and Diario Digital publish advertisements of El Paso businesses and institutions.

The record supports this finding, namely Mr. Rodriguez-Jimenez's testimony during cross-examination. El Diario de Juarez's no-evidence challenge as to finding of fact #43 fails.

- #55: The El Diario de Juarez and El Diario de El Paso newspapers are jointly sold, circulated, and distributed in Texas. They contract for each other in Texas, share and publish the same news articles, advertisements, and classified ads, use the same logos, the same names, and market themselves online and on newstands as just one newspaper.

The record supports the first sentence of this finding for the same reasons described in finding of fact #9. Record evidence also supports the second sentence, as the service agreement between El Diario de El Paso and El Diario de Juarez provides El Diario de El Paso and El Diario de Juarez can contract on each other's behalf for "advertising agreements, spots, panels, events, photos, inserts and any products that may be sold" by either entity. Further, at the special appearance hearing, Mr. Rodriguez-Jimenez testified El Diario de El Paso and El Diario de Juarez reference, cross-publish, and republish articles originally published by the other entity.

El Diario de Juarez's no-evidence challenge as to finding of fact #55 thus fails.

- #61: Diario Digital has filed and defended defamation lawsuits in El Paso County, Texas, namely *Publicaciones Paso del Norte, SA. de C.V. v. Belo Corp. et al.,* Cause No. 2004-4750, County Court at Law Number Six, El Paso County, Texas; and *Christopher Houseman v. Publicaciones Paso del Norte,* Cause No. 2004-5050, 327th District Court, El Paso County, Texas.

The record supports this finding. The trial court admitted as exhibits to the special appearance hearing pleadings, related affidavits, and other filings in both unrelated lawsuits.

El Diario de Juarez's no-evidence challenge as to finding of fact #61 fails.

- #62: In those lawsuits, Diario Digital admitted that the El Diario de Juarez newspaper is distributed and circulated in El Paso County, Texas and described its deliberate efforts to expand its presence in El Paso County, Texas.

Record evidence supports part of this finding of fact. Mr. Rodriguez Borunda testified in affidavits as part of this unrelated litigation that "El Diario de Juarez . . . is circulated in Juarez and El Paso" and "El Diario has made efforts to significantly expand its presence in the city of El Paso[.]" However, Mr. Rodriguez Borunda's testimony was on behalf of El Diario de Juarez, not Diario Digital, so that part of this finding of fact was erroneous.

El Diario de Juarez's no-evidence challenge as to finding of fact #62 succeeds in part and fails in part.

- #63: El Diario de Juarez and Diario Digital have published advertisements and classified ads for Texas business and residents with the deliberate goal of targeting Texas consumers and readers. El Diario de Juarez and Diario Digital have made substantial efforts, whether on their own or through El Diario de El Paso, to market, distribute, circulate, and sell their products and increase their popularity in Texas lending support that El Diario de Juarez and Diario Digital continuously and deliberately exploit the Texas market.

As described above, Mr. Rodriguez-Jimenez's testimony during cross-examination at the special appearance hearing acknowledges El Diario de Juarez and Diario Digital publish advertisements and classified ads for Texas businesses and residents. Record evidence also

21

supports the finding that El Diario de Juarez distributes, circulates, and sells its newspaper in Texas for the same reasons described in finding of fact #9.

Given the collective evidence and testimony presented, it was not unreasonable for the trial court to conclude El Diario de Juarez and Diario Digital's goal or purpose in doing so is to target the El Paso County market. Accordingly, we find the trial court's finding of fact #63 is not contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust, and El Diario de Juarez's no-evidence challenge fails.

- #64: Through the purposeful and intentional exploitation of the El Paso County market, El Diario de Juarez and Diario Digital have derived significant revenue through the years.

The record supports the finding that El Diario de Juarez and Diario Digital have derived significant revenue through the years. In support of his response to the special appearances, Corral submitted exhibits reflecting El Diario de Juarez and Diario Digital's sales revenue over a period of several years. Viewing the evidence in a light most favorable to the challenged finding, we conclude there is sufficient record evidence to enable a reasonable factfinder to reach the conclusion that El Diario de Juarez and Diario Digital derived this revenue, at least in part, through exploitation of the El Paso County market.

We find the trial court's finding of fact #64 is not so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust; thus, El Diario de Juarez's no-evidence challenge to finding of fact #64 fails.

- #65: El Diario de Juarez and Diario Digital have purposefully availed themselves of the laws, benefits, privileges, and protection of conducting activities in Texas, such that they could reasonably anticipate being haled into court in this State.

22

This finding of fact is better characterized as a conclusion of law, so we consider it below de novo to determine its correctness as applied to the facts. *See Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008).

Having resolved El Diario de Juarez's legal-and factual-sufficiency challenges, we now turn to whether—based on the findings of fact—the trial court properly found it could exercise jurisdiction over El Diario de Juarez.

### 3. Specific jurisdiction

El Diario de Juarez contends it is not subject to specific jurisdiction in this case because none of its conduct related to Corral's claims took place in Texas; it argues the allegedly defamatory articles were researched, written, edited, printed, and published in Mexico by journalists residing in Mexico about the Governor of a Mexican state and targeted to Mexican readers.

Corral counters specific jurisdiction is proper because El Diario de Juarez widely circulated the allegedly defamatory articles in El Paso, and through its newspaper's circulation, distribution, sales, and advertisements, El Diario de Juarez purposefully availed itself of the benefits of conducting activities in Texas such that it could reasonably anticipated being haled into Texas state court.

### i. Purposeful availment

Under the first prong of the specific-jurisdiction inquiry, we consider whether El Diario de Juarez, as a nonresident defendant, purposefully availed itself of the privilege of conducting activities in Texas. *See Old Republic*, 549 S.W.3d at 559. We look to El Diario de Juarez's contacts with Texas, determining whether its contacts are purposeful, rather than random, fortuitous, or

23

attenuated, and whether El Diario de Juarez sought a benefit, advantage, or profit by availing itself of the jurisdiction. *Moki Mac*, 221 S.W.3d at 575.

El Diario de Juarez argues since the creation of El Diario de El Paso in April 2005, it has not sold, circulated, or distributed its newspaper in El Paso, nor has it targeted Texas residents or maintained a physical presence in Texas, such that the purposeful-availment requirement is therefore absent. But the dispute as to whether El Diario de Juarez is sold, circulated, or distributed in El Paso and maintains a physical presence in Texas is resolved; El Diario de Juarez's legal- and factual-sufficiency challenges to the trial court's findings of fact concluding the same fail for the reasons described above. Because we find that the trial court's findings of fact are not "so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust[,]" we rely on those findings for jurisdictional-analysis purposes. *Fed. Corp.*, 632 S.W.3d at 716 (citing *Cain*, 709 S.W.2d at 176). That means we defer to the trial court's finding of fact that El Diario de Juarez has an office in El Paso County, as well as Texas-based employees and Texas-resident shareholders, directors, and officers.

Further, we assess a defendant's contacts "over a reasonable number of years, up to the date suit is filed," including its contacts at the time the cause of action arose. *PHC-Minden*, 235 S.W.3d at 170 (discussing timing of jurisdictional contacts in a general-jurisdiction inquiry). Accordingly, El Diario de Juarez's pre-April 2005 contacts with Texas are not necessarily irrelevant; however, we afford them less weight than its more recent contacts in the intervening years, including those existing when the articles were published.

*TV Azteca* is our most instructive guiding precedent, as it addresses specific jurisdiction in the context of defamation claims asserted against a media company. 490 S.W.3d 29. In that case, the Texas Supreme Court considered an interlocutory appeal following the denial of special

appearances in a case brought by Texas residents contending the Mexican-citizen television-broadcaster defendants defamed them in television programs that originated in Mexico but reached parts of Texas. *Id.* at 35. The Court concluded the allegations and evidence that the broadcasters "directed a tort" at the plaintiffs in Texas, broadcast allegedly defamatory statements in Texas, and knew the statements would be broadcast in Texas were not enough to establish purposeful availment; however, the evidence supporting the allegation that the broadcasters intentionally target Texas through the broadcasts was. *Id.* at 43. Analogizing to the stream-of-commerce personal jurisdiction cases, the Court reasoned the broadcasters' mere knowledge that its programs would be received in Texas was insufficient to establish purposeful availment; instead, it required evidence of "additional conduct" to establish the broadcaster had an intent or purpose to serve the Texas market. *Id.* at 46–47. The *TV Azteca* plaintiffs met the "additional conduct" requirement by establishing the broadcasters targeted Texas by "continuously and deliberately exploit[ing]" the Texas market. *Id.* at 47. Specifically, the plaintiffs submitted evidence showing the broadcasters "made substantial and successful efforts to benefit from the fact that the signals travel into Texas, as well as additional efforts to promote their broadcasts and expand their Texas audience." *Id.* at 49. The evidence established the broadcasters: (1) physically entered Texas to produce and promote their broadcasts; (2) derived "substantial revenue and other benefits" through selling advertisements to Texas businesses; and (3) took "substantial and successful efforts" to distribute programming and increase popularity in Texas, including the programs in which the allegedly defamatory statements were made. *Id.* at 49–50. Collectively, the Court found the broadcasters' contact with Texas supported the trial court's finding that the broadcasters "continuously and deliberately exploited the [Texas] market." *Id.* at 52 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984)).

Here, El Diario de Juarez's additional conduct in Texas is even less tenuous than that of the *TV Azteca* broadcasters. Though El Diario de Juarez is also a Mexican corporation, it has at least one employee in Texas, as well as Texas-resident officers, shareholders, and directors, and a Texas office, phone number, and bank account—none of which the broadcaster defendant in *TV Azteca* had. Further, El Diario de Juarez regularly publishes advertisements of El Paso businesses and classified ads on behalf of El Paso residents, for which it receives seventy percent of sales revenue, and it publishes newsworthy articles about events in El Paso. El Diario de Juarez also has been a party to a lawsuit in Texas.[10] And, importantly, El Diario de Juarez entered a services agreement with El Diario de El Paso, such that the two companies can contract on each other's behalf for any "advertising, agreements, spots, panels, events, photos, inserts and any products that may be sold" by either newspaper, both online and in print. Indeed, at the special appearance hearing, Mr. Rodriguez-Jimenez agreed El Diario de El Paso has the ability to sign contracts as an agent on behalf of El Diario de Juarez in Texas, as well as the authority to act as its advertising agency in El Paso.[11] The trial court admitted evidence reflecting payments from El Paso residents and businesses to El Diario de Juarez for advertisements or classified ads placed in its newspaper, as well as agreements between El Paso entities and El Diario de El Paso or Diario Digital for

---

[10] We are mindful of the fact that both lawsuits reflected in the record were brought before the creation of El Diario de El Paso in April 2005, and we give these contacts less weight, as it is the "quality and nature of the contacts, not the quantity" that matter in a purposeful-availment context. *Moncrief Oil*, 414 S.W.3d at 151.

[11] The unilateral activity of a third party who has some relationship with the nonresident defendant cannot provide the basis for jurisdiction. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). However, when an *agency* relationship between a nonresident defendant and a forum-state resident exists, the Texas contacts of the agent may be attributed to its nonresident principal for jurisdictional-analysis purposes. *See Huynh v. Nguyen*, 180 S.W.3d 608, 620 (Tex. App.— Houston [14th Dist.] 2005, no pet.) (finding minimum contacts for nonresident defendant based on agent's contacts with the forum state in specific jurisdiction context); *Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 553–54 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (same). Given the agency relationship between the two newspapers, the contracts El Diario de El Paso entered with Texas residents on El Diario de Juarez's behalf for advertising space in its newspaper, and the fact that El Diario de Juarez financially benefits from these arrangements, we conclude El Diario de El Paso's contacts with Texas residents may be considered in the minimum contacts analysis for El Diario de Juarez and support the exercise of jurisdiction.

advertising placements in El Diario de Juarez. In other words, the record reflects El Diario de El Paso, apparently acting under its authority to contract on behalf of El Diario de Juarez, indeed has entered into contracts with El Pasoans on El Diario de Juarez's behalf and to its benefit. Collectively, we conclude this "additional conduct" demonstrates El Diario de Juarez's "intent or purpose to serve the market in the forum State." *TV Azteca*, 490 S.W.3d at 46. El Diario de Juarez's collective actions amount to more than "mere knowledge" that its publications will be circulated in El Paso County and demonstrate El Diario de Juarez "'continuously and deliberately exploited' the Texas market." *Id.* (quoting *Keeton*, 465 U.S. at 781).

El Diario de Juarez emphasizes it does not physically transport its publication to Texas or distribute it in El Paso County; instead, it sells the publication to El Diario de El Paso, which picks up the publication in Ciudad Juarez before bringing it back to El Paso for circulation and distribution. "To be sure, courts may lack specific jurisdiction over a nonresident defendant who made no independent efforts to purposefully avail itself of Texas and merely contracted with a third party who did." *Id.* at 51. However, "a defendant who 'intentionally targets Texas as the marketplace for its products' is subject to specific jurisdiction, and 'using a distributor-intermediary for that purpose provides no haven from the jurisdiction of a Texas court.'" *Id.* (quoting *Spir Star*, 310 S.W.3d at 871). In this case, the record demonstrates El Diario de Juarez made efforts to benefit from the fact that its publications are sold and circulated in Texas: It derived substantial revenue from advertising and sales over a years-long period—including after El Diario de El Paso's creation in April 2005—and entered into a services agreement with El Diario de El Paso to contract on its behalf in Texas. We conclude the evidence supports a finding that El Diario de Juarez made substantial and successful efforts to distribute its publication in Texas—and

financially benefit from that fact—not just that it contracted with another corporation that has contacts with Texas.

Finally, El Diario de Juarez maintains *TV Azteca* is inapposite because its articles targeted a Mexican audience and any alleged harm took place in Mexico, where Corral resided and was Governor.[12] As discussed above, we resolved the challenged finding of fact concluding El Diario de Juarez designs its newspapers for the market in El Paso County. We agree the mere fact that El Diario de Juarez allegedly directed defamatory statements at Corral, who claims he was harmed in Texas, without more, does not establish grounds to exercise specific jurisdiction over El Diario in Juarez; it is, however, relevant "to the extent that it shows that *the forum state* was 'the focus of the activities of the defendant.'" *Id.* at 43 (quoting *Keeton*, 465 U.S. at 780).

In sum, the quality and nature of El Diario de Juarez's contacts detailed in record evidence—including after the creation of El Diario de El Paso in April 2005—is enough to create a substantial connection with Texas. We thus conclude the evidence supports the trial court's finding that El Diario de Juarez purposefully availed itself of the benefits of conducting activities in Texas such that it "could reasonably anticipate being haled into court there." *Moncrief Oil*, 414 S.W.3d at 152.

### ii. Relatedness

Under the second prong of the specific-jurisdiction inquiry, we determine whether Corral's claim "arises from or is related to" El Diario de Juarez's purposeful activities in Texas. *Id.* at 150. This standard does not require proof that Corral would have no claim "but for" El Diario de Juarez's forum contacts or that its forum contacts were a proximate cause of his injuries; instead,

---

[12] At the special appearance hearing, Corral testified he is a dual citizen of the United States and Mexico but lived in Juarez during his term as Governor when the articles at issue were published.

28

we ask what Corral's claims are principally concerned with, whether El Diario de Juarez's forum contacts will be the focus of the trial, and whether the contacts are related to the operative facts of Corral's claims. *TV Azteca*, 490 S.W.3d at 52–53 (internal quotations and citations omitted).

El Diario de Juarez contends Corral's claims do not arise from or relate to its contacts with Texas (which it disputes exist in the first place) because, it argues, this case concerns articles about property and transactions in Mexico, and its journalists who wrote the articles, as well as the essential witnesses they relied upon in their reporting, are Mexican residents. It also contends the articles were printed in Juarez, not Texas.

The Texas Supreme Court has distinguished between "additional conduct"—the intent or purpose to serve the market in the forum state—and "actionable conduct"—the conduct "from which the claim arose" and which forms the basis of liability. *Luciano*, 625 S.W.3d at 18 (citing *TV Azteca*, 490 S.W.3d at 47, 53). So long as the actionable conduct occurred in Texas, a reviewing court need not determine whether the claims arose from the nonresident defendant's additional conduct in Texas. *Id.* (citing *TV Azteca*, 490 S.W.3d at 54–55; *cf. Moki Mac*, 221 S.W.3d at 588 (finding no relatedness when alleged harm occurred outside forum state and relationship between operative facts of litigation and defendant's forum contacts were "too attenuated"). In other words, the *additional* conduct requirement serves "merely to ensure that the nonresident defendant has purposefully targeted the Texas market," but if the *actionable* conduct occurs in Texas, there is no requirement the lawsuit must arise directly from the nonresident defendant's additional conduct. *Luciano*, 625 S.W.3d at 18 (citing *TV Azteca*, 490 S.W.3d at 54–55). To require otherwise—*i.e.*, to require a direct causal connection between a nonresident defendant's additional conduct and a lawsuit in which the actionable conduct occurred in Texas—would apply "too exacting a standard,

one that the [United States] Supreme Court in *Ford Motor Co.* reiterated is not required to pass constitutional muster." *Id.* (citing *Ford Motor*, 141 S. Ct. at 1026).

El Diario de Juarez's additional conduct in Texas, described above—including selling its publications to El Diario de El Paso for circulation in Texas, advertising, and services agreement with El Diario de El Paso—establishes that El Diario de Juarez purposefully targeted the Texas market. El Diario de Juarez's actionable conduct involves allegedly causing injury through the publication of the defamatory articles. Like the *TV Azteca* broadcasts, El Diario de Juarez's articles may have originated in Mexico, but they were circulated, sold, and allegedly caused harm in Texas. *See TV Azteca*, 490 S.W.3d at 54. Because the actionable conduct at issue here occurred in Texas, we do not need to determine whether Corral's claims arise from El Diario de Juarez's additional conduct in Texas, and the relatedness requirement is satisfied. *See Luciano*, 625 S.W.3d at 18.

We conclude the evidence supports the trial court's conclusion El Diario de Juarez has sufficient minimum contacts with Texas to support specific jurisdiction. Because exercising specific jurisdiction over El Diario de Juarez in this case is appropriate, we do not address whether general jurisdiction applies.

**B. The trial court properly found Diario Digital established minimum contacts with Texas.**

*1. Corral pled sufficient jurisdictional allegations as to Diario Digital.*

In the live pleading, Corral alleges Diario Digital does business in Texas, committed a tort in Texas, and contracted with a Texas resident to perform a contract in whole or in part in Texas. Specifically, Corral alleges Diario Digital, like El Diario de Juarez, committed a tort in Texas by publishing, circulating, distributing, selling, republishing, and/or cross-referencing the purportedly defamatory articles about him in El Paso County, from which his cause of action arises. Corral contends Diario Digital is not a passive website but instead advertises El Diario de Juarez and El

30

Diario de El Paso subscriptions for delivery to El Paso residents. Further, Corral alleges Diario Digital allows El Paso residents to enter into subscription agreements.

These jurisdictional allegations collectively satisfy the pleading requirements to bring Diario Digital within the reach of the Texas long-arm statute and shift the burden to Diario Digital to negate all possible bases for jurisdiction. *See Kelly*, 301 S.W.3d at 658.

> ### 2. *The trial court's findings of fact as to Diario Digital and the evidence in this case*

Like El Diario de Juarez, Diario Digital challenges several of the trial court's findings of fact related to its website.[13] As above, we consider each additional challenged finding for legal and factual sufficiency, applying the requisite no-evidence standard of review.

- #40: El Diario de Juarez and Diario Digital design their print and online newspapers for the El Paso market.

This finding of fact is duplicative of finding #27. Diario Digital's no-evidence challenge fails for the same reason as finding of fact #27.

- #41: El Diario de Juarez and Diario Digital publish an El Paso section, which includes newsworthy events in El Paso.

Record evidence supports this finding of fact. Mr. Rodriguez-Jimenez's affidavit appended to El Diario de Juarez's special appearance states after El Diario de El Paso purchases and picks up El Diario de Juarez, it "adds its own El Paso section." Corral also submitted as evidence exhibits of several diario.mx screenshots, which include a link to an "El Paso" tab.

Diario Digital's no-evidence challenge as to finding of fact #41 thus fails.

- #44: Acting as an advertising agent, Diario Digital refers online subscribers in El Paso County to El Diario de Juarez as another regular channel of communication with El Paso residents over its products. El Diario de Juarez has

---

[13] Specifically, Diario Digital challenges findings of fact 27, 29, 40–47, 49, 51, 56, and 63–65. Because several of its challenged findings overlap with El Diario de Juarez's, we review only the additional challenged findings of fact here.

routinely used Diario Digital for this purpose since El Diario de Juarez was formed.

There is record evidence to support the first sentence of this finding of fact for the same reasons as described below in challenged finding of fact #46. However, we have not found, nor has Corral pointed us to, any record evidence supporting the assertion that "El Diario de Juarez has routinely used Diario Digital for this purpose since El Diario de Juarez was formed." Accordingly, Diario Digital's no-evidence challenge as to finding of fact #44 fails in part and succeeds in part.

- #45: The intention of El Diario de Juarez is to attract El Paso County readers through Diario Digital.

Record evidence supports this finding of fact. At the special appearance hearing, Mr. Rodriguez-Jimenez affirmed that "the intent of El Diario de El Paso and El Diario de Juarez through Diario Digital is to attract El Paso readers."

Diario Digital's no-evidence challenge as to finding of fact #45 fails.

- #46: Through Diario Digital, El Diario de Juarez allows El Paso County residents to interact and subscribe online to receive a hard copy of the El Diario de Juarez newspaper in El Paso County.

The record generally supports this finding of fact. The following exchange occurred during direct examination of Mr. Rodriguez-Jimenez at the special appearance hearing:

Q:   Explain how that subscription process works, for example, if I'm an El Paso resident and I wanted to subscribe to El Diario de El Paso or El Diario de Juarez on [Diario Digital].

A:   You can go [to Diario Digital] and ask to be subscribed to Juarez or El Paso, but that hasn't worked because our readers are older people.

Q:   But as an El Paso resident can I subscribe on the website to the Juarez paper?

A:   You can request it because the option is there, but it automatically sends you to either Juarez or El Paso, depending on where you are, to their office depending on the city.

Q:    Can a potential subscriber pay for a subscription on the website?

A:    No.

The trial court also admitted as evidence screenshots from this page on diario.mx, including the translated version below:



**Subscribe!**

El Diario de Juarez or El Paso

Receive our printed newspaper delivery daily plus special supplements in the comfort of your office and/or home.
Call 6 29 19 88 or fill out the following form.

Name...

Email...

Telephone...

Address...

Daily
○ Annual $ 2,399.00
○ Biannual $1,399.00
○ Quarterly $699.00
○ Monthly $240.00

Weekend (F-S-S-M)
○ Annual $ 1,800.00
○ Semiannual $900.00
○ Quarterly $450.00

All the subscription plans include access via internet and apps to our digital printed version

In other words, a potential subscriber to El Diario de Juarez or El Diario de El Paso cannot pay for a subscription on Diario Digital but can complete a form requesting a specific subscription (*e.g.*, daily or weekend edition) and including his or her contact information. Thus, while record

evidence does not support the assertion that a potential customer can complete a subscription transaction via Diario Digital, it does support the finding that a potential customer can indicate his or her interest in subscribing to either El Diario de Juarez or El Diario de El Paso.

Diario Digital's no-evidence challenge as to finding of fact #46 therefore fails.

- #47: To subscribe through Diario Digital, El Paso residents have the ability to include their full contact information and select their preferred subscription to receive El Diario de Juarez. Diario Digital publishes the cost for a monthly, quarterly, or annual subscription of El Diario de Juarez. All online subscriptions plans to Diario Digital and Diario de Juarez include access via internet and apps to their digital printed version. According to Diario Digital, by subscribing online, El Paso residents can receive the printed copy of El Diario de Juarez plus special supplements delivered in the "comfort of your office and/or home" in El Paso County.

This finding of fact is substantiated by the same record evidence supporting finding of fact #46. Diario Digital's no-evidence challenge as to finding of fact #47 fails.

- #49: El Diario de Juarez is also the owner of the U.S.-domain name, ElDiarioUSA.com. Owned and operated by El Diario de Juarez, El Diario USA is an online newspaper targeted to Hispanic and Spanish-speaking residents in the State of Texas, which includes links to El Diario de Juarez and El Diario de El Paso.

We have not found, nor has Corral pointed us to, any record evidence to support the finding that El Diario de Juarez owns the domain name ElDiarioUSA.com. Diario Digital's no-evidence challenge as to finding of fact #49 thus succeeds.

- #51: In addition, El Diario de Juarez and Diario Digital market their online and print newspaper content in El Paso County through El Diario de El Paso.

To the extent this finding of fact overlaps with finding of fact #27, sufficient record evidence supports this finding. Further, Mr. Rodriguez-Jimenez testified El Diario de El Paso will republish articles originally published by El Diario de Juarez if it determines the articles are newsworthy to El Paso residents. He also confirmed it is a common practice for Diario Digital to publish articles from El Diario de El Paso and El Diario de Juarez.

Diario Digital's no-evidence challenge fails as to finding of fact #51.

- #56: In contracts with El Paso County businesses and institutions, El Diario de El Paso states that it is doing business as El Diario de Juarez and Diario Digital in the State of Texas. In those Texas-based contracts, El Diario de Juarez, Diario Digital, and ¡VAMOS! publish advertisements of El Paso County businesses and institutions and charge for these advertisement services. In consideration for the publication of advertisements of El Paso County businesses and institutions, El Diario de Juarez earns seventy percent (70%) of the sales revenue and El Diario de El Paso earns the remaining thirty percent (30%). El Diario de Juarez receives these monetary payments through deposits or transfers to its bank account in the State of Texas.

This finding of fact is partially supported by record evidence. The trial court admitted as evidence contracts between El Diario de El Paso and El Paso-based businesses and institutions. However, in those agreements, Paso del Norte Publishing, Inc. (*i.e.*, El Diario de El Paso) stated it was doing business as El Diario de El Paso, El Diario de Juarez, and El Diario de Chihuahua— Diario Digital is not included.[14] The various contracts reflect the advertisements will run in, among other places, El Diario de Juarez, Diario Digital, and ¡VAMOS!. Mr. Rodriguez-Jimenez also testified to the seventy-thirty revenue split between El Diario de Juarez and El Diario de El Paso, and El Diario de Juarez admitted it uses its Texas bank account to process these payments. Accordingly, Diario Digital's no-evidence challenge as to finding of fact #56 fails in part and succeeds in part.

Having resolved Diario Digital's legal- and factual-sufficiency challenges, we next turn to whether the trial court properly found it could exercise specific jurisdiction over Diario Digital.

---

[14] Diario Digital is, however, listed as one of the publications in which the purchasing institution's advertisements will run.

### 3. Specific jurisdiction

Because no party suggests the trial court may exercise general jurisdiction over Diario Digital, our analysis considers only whether the trial court properly determined it may exercise specific jurisdiction over Diario Digital in this case.

### i. Purposeful availment

Both parties' arguments focus on the nature of Diario Digital's website and how "interactive" it is to determine whether Diario Digital established purposeful contacts with Texas. This analysis relies on the sliding-scale view of web activities in personal-jurisdiction cases, in which courts consider whether the website is transactional (in which case jurisdiction is proper), passive (in which it is not), or interactive (in which it depends on the level of interactivity and commercial nature of the exchange to determine whether jurisdiction is proper). *Epicous Adventure Travel, LLC v. Tateossian, Inc.*, 573 S.W.3d 375, 387 (Tex. App.—El Paso 2019, no pet.) (citing *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997)). Many jurisdictions have applied this test, including our Court and several of our sister courts. *See id.* (collecting cases).

But as Corral points out, the United States Supreme Court has recently indicated disapproval of a sliding-scale approach to specific-jurisdiction analysis. *See Bristol–Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1781 (2017).[15] We need not determine whether the sliding-scale analysis is still viable, however, because while evidence of a website's level of interactivity can be an important factor in an internet-based personal-jurisdiction analysis, it is

---

[15] This disapproval came in response to the California Supreme Court's sliding-scale approach to personal jurisdiction, in which "the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims." *See Bristol–Myers Squibb*, 137 S. Ct. at 1781. The Court concluded this approach "resembles a loose and spurious form of general jurisdiction," and under specific jurisdiction, "a defendant's general connections with the forum are not enough." *Id.*

merely evidence of purposeful conduct with the forum—not per se dispositive of whether jurisdiction is proper. *See ShopStyle, Inc. v. rewardStyle, Inc.*, No. 05-19-00736-CV, 2020 WL 4187937, at *8 (Tex. App.—Dallas July 21, 2020, no pet.) (mem. op.) (citing *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 227 n.7 (5th Cir. 2012)). Thus, while we consider evidence of Diario Digital's interactivity, we consider it alongside the nature and quality of its online and offline contacts to determine whether it has established the requisite purposeful conduct to support personal jurisdiction. *See Pervasive Software*, 688 F.3d at 227 n.7.

Diario Digital contends it "merely owns diario.mx, a passive website where [El Diario de Juarez] hosts its articles." It claims it has no Texas employees, no real estate in Texas, no Texas bank account, no Texas office, never filed or defended a lawsuit in Texas, and never registered to do business in Texas. Diario Digital argues its website is passive because it is "used only to provide contact information or to advertise," and as such, Diario Digital contends it is insufficient to establish minimum contacts.

Corral maintains Diario Digital owns an interactive website because it solicits subscribers from El Paso County, advertises Texas-based businesses, posts classified ads from Texas residents, and publishes events and news from El Paso. Though there is no record evidence supporting the notion that potential subscribers can complete a subscription or make purchases through the website, they can communicate their interest in obtaining a subscription directly to Diario Digital—in other words, Diario Digital hosts a direct exchange of information between a potential customer and the host computer about a commercial transaction. *See Reiff v. Roy*, 115 S.W.3d 700, 706 (Tex. App.—Dallas 2003, pet. denied) (describing the nature of interactive websites). Given the trial court's finding of fact that "[t]hrough Diario Digital, El Diario de Juarez allows El Paso County residents to interact and subscribe online," the record supports the conclusion that Diario

37

Digital is the owner of an interactive website. This conclusion provides evidence of Diario Digital's purposeful availment of the Texas market and its contacts with the forum state; however, it is not dispositive. *See Waterman Steamship Corp. v. Ruiz*, 355 S.W.3d 387, 418 (Tex. App.— Houston [1st Dist.] 2011, pet. denied) (finding interactive website alone was not enough to subject nonresident defendant to jurisdiction but a factor along with its other forum contacts). We consider Diario Digital's other contacts with Texas and conclude they collectively support a finding of purposeful availment.

For example, Mr. Rodriguez-Jimenez testified Diario Digital publishes advertisements for El Paso businesses, which provides further evidence of Diario Digital's purposeful contacts with Texas. While any web user, Texas-based or otherwise, may have been able to access the website, Diario Digital specifically targeted Texas, and El Paso in particular, with its advertising for El Paso-based businesses and institutions, just as El Diario de Juarez has done in its print newspapers. *Cf. Skylift, Inc. v. Nash*, No. 09-19-00389-CV, 2020 WL 1879655, at *6 (Tex. App.—Beaumont Apr. 16, 2020, no pet.) (mem. op.) (finding no specific jurisdiction when, among other things, website did not "specifically target[] Texas with advertising" and citing cases finding the same).

Additionally, Diario Digital publishes editorial content from El Diario de Juarez and El Diario de El Paso on its website, including the allegedly defamatory articles at issue in this case. As Mr. Rodriguez-Jimenez testified at the special appearance hearing, all collective web traffic related to El Diario de Juarez or El Diario de El Paso routes through diario.mx,[16] which gets more than 15 million visits to its website each month. The trial court also admitted exhibits from

---

[16] Mr. Rodriguez-Jimenez clarified the other websites linked to El Diario de Juarez and El Diario de El Paso, including diariousa.com, reroute to diario.mx.

diario.mx reflecting its circulation in Chihuahua and El Paso. This amounts to evidence that Diario Digital engaged in purposeful activity aimed at Texas.

Collectively, we conclude the pleadings and evidence supports the conclusion that Diario Digital's contacts with Texas "tip[] the scales" in favor of a finding of purposeful availment. *Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 887 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

*ii. Relatedness*

Though neither Corral nor Diario Digital addresses the relatedness requirement, in a specific-jurisdiction inquiry, we must still determine whether Corral's claim "arises from or is related to" Diario Digital's purposeful activities in Texas. *Moncrief Oil*, 414 S.W.3d at 150; *see ShopStyle*, 2020 WL 4187937, at *13 ("A website, even an interactive one, cannot support specific jurisdiction where . . . it does not have the requisite substantial relationship to the plaintiff's claims.").

Like El Diario de Juarez, Diario Digital's actionable conduct in this case—purportedly causing injury through the publication of the defamatory articles—allegedly occurred in Texas: Corral alleges Diario Digital published, circulated, distributed, sold, republished, and/or cross-referenced the allegedly defamatory articles at issue in this case in El Paso County, Texas. Unlike other internet-based personal jurisdiction cases, Corral's allegations directly link the actionable conduct to the operative facts of the litigation. *See, e.g.*, *ShopStyle, Inc. v. rewardStyle, Inc.*, No. 05-19-00736-CV, 2020 WL 4187937, at *12–13 (Tex. App.—Dallas July 21, 2020, no pet.) (mem. op.) (finding relatedness requirement not met when record contained no allegations or evidence that actionable conduct occurred in or related to Texas). Just as an El Paso-based reader could access the allegedly defamatory articles through print copies published in El Diario de Juarez

circulated and sold in El Paso County, the same reader could access the same articles through Diario Digital's website, which targets the El Paso market.

Further, Diario Digital's purposeful activity aimed at the Texas market provides additional evidence of relatedness with Corral's claims. For example, as detailed above, the record supports the trial court's finding that "El Diario de Juarez and Diario Digital design their print and online newspapers for the market in El Paso County, Texas," as well as various other findings supporting the notion that Diario Digital publishes newsworthy content relevant to El Pasoans. Diario Digital's practice of placing web-based advertisements for El Paso businesses, as well as classified ads from El Paso residents, also speaks to its intent to serve the El Paso market as a web-based news source. Because Corral's claims arise out of allegedly defamatory articles published by Diario Digital—like its other editorial content and accompanying advertising, as a newsworthy story of interest to the El Paso market—the actionable conduct in this case relates to Diario Digital's purposeful contacts with Texas.

Diario Digital's forum contacts directly relate to its intent to serve the Texas market with editorial content relevant to an El Paso-based readership and supported by advertisements from El Paso businesses and institutions. Because the allegedly defamatory articles at issue in the case— *i.e.*, the actionable conduct—directly relate to Diario Digital's contacts with Texas, we conclude the relatedness requirement is met, and the trial court did not err in finding it could exercise specific jurisdiction over Diario Digital.

### C. Fair Play and Substantial Justice

Finally, due process permits the exercise of jurisdiction over a nonresident only if doing so comports with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. "If a nonresident has minimum contacts with the forum, rarely will the exercise of jurisdiction

over the nonresident not comport with traditional notions of fair play and substantial justice." *Moncrief Oil*, 414 S.W.3d at 154–55. However, we must consider several factors to evaluate the fairness and justness of exercising personal jurisdiction over a nonresident defendant, including: (1) the burden on the defendant; (2) the interests of the forum in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the international judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several nations in furthering fundamental substantive social policies. *Id.* at 155. When, as here, the defendants are citizens of a foreign country, we consider more specifically the unique burdens placed upon the defendant who must defend itself in a foreign legal system; the state's regulatory interests; and the procedural and substantive polices of other nations whose interests are affected, as well as the federal government's interest in its foreign relations policies. *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 229 (Tex. 1991). "The defendant bears the burden of presenting a compelling case that the presence of some consideration would render the exercise of jurisdiction over it unreasonable." *Fitzgerald Truck Parts & Sales, LLC v. Advanced Freight Dynamics, LLC*, No. 14-19-00397-CV, 2021 WL 1685353, at *10 (Tex. App.—Houston [14th Dist.] Apr. 29, 2021, pet. filed) (citing *Spir Star*, 310 S.W.3d at 879).

El Diario de Juarez and Diario Digital contend these factors "weigh heavily in favor of dismissal." Specifically, they argue: (1) Corral is not a Texas resident; (2) the alleged harm, if any, took place in Mexico; (3) the witnesses are in Mexico and it is unclear if they are able or willing to travel to Texas to testify; (4) all documents are in Spanish; (5) it would be unfair to try this case outside of Mexico because neither El Diario de Juarez nor Diario Digital should be judged by

American defamation standards;[17] and (6) two related cases are pending in Mexico. Corral counters El Diario de Juarez and Diario Digital have not met their burden, and because they are not the only defendants in this case—and El Diario de El Paso has not challenged jurisdiction— the international judicial system's interest in efficiency further supports the exercise of jurisdiction.[18] We agree El Diario de Juarez and Diario Digital have not presented "a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

Requiring El Diario de Juarez and Diario Digital to defend Corral's claims in Texas will not pose an undue burden for either appellant. Though they are Mexican corporations headquartered in Mexico, that alone will not defeat jurisdiction. *Guardian Royal*, 815 S.W.2d at 231 ("Nor is distance alone ordinarily sufficient to defeat jurisdiction: modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity" (internal quotations omitted)). El Paso is "family territory" for their leadership; for example, Mr. Rodriguez-Jimenez, as well as his father (the president, director, and principal shareholder of El Diario de Juarez), and two siblings (both shareholders of El Diario de Juarez) live in El Paso County. *See Spir Star*, 310 S.W.3d at 879 (finding jurisdiction over foreign corporation reasonable in part based on its leadership regular presence in forum).

Texas has a significant interest in exercising jurisdiction over controversies arising from injuries a Texas resident sustains in Texas. *Id.* While Corral has dual citizenship in the United

---

[17] El Diario de Juarez and Diario Digital also filed a motion to determine choice of law, contending Mexican law applies to this case. Corral argued Texas law instead applies, and the trial court agreed. That decision is not before us.

[18] In a footnote and without citation to legal authority, Corral also argues "[a]lternatively, and in addition, El Diario de Juarez and El Diario de El Paso are alter egos of each other." Because this argument is not fully briefed, we do not consider it. *See* TEX. R. APP. P. 38.1(i), 38.2(a)(1); *Barrientos v. Jacobs Eng'g Grp. Inc.*, No. 13-20-00092-CV, 2021 WL 3411869, at *2 (Tex. App.—Corpus Christi– Aug. 5, 2021, no pet.) (mem. op.) (declining to address issue raised in footnote and not adequately briefed).

States and Mexico, there is no evidence in the record to establish that he is a Texas resident. However, Texas also has an interest in exercising jurisdiction over those who commit torts within its territory. *TV Azteca*, 490 S.W.3d at 55 (citing *Keeton*, 465 U.S. at 776). Given El Diario de Juarez and Diario Digital's extensive contacts with Texas and their history of targeting the Texas market and El Pasoans in particular, this case is not one of the "rare instances" in which "the exercise of jurisdiction [does] not comport with fair play and substantial justice when the nonresident defendant purposefully established minimum contacts with the forum state." *Angelou v. African Overseas Union*, 33 S.W.3d 269, 281 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

Corral's interest in obtaining convenient and effective relief is also served by the exercise of jurisdiction over El Diario de Juarez and Diario Digital. Notably, the third defendant in this case, El Diario de El Paso, has not contested jurisdiction. If we dismiss claims against El Diario de Juarez and Diario Digital, presumably the claims against El Diario de El Paso will still be heard in Texas, while Corral will face the burden of bringing claims against El Diario de Juarez and Diario Digital in Mexico. Particularly because this case began in March 2020 and to date has involved significant jurisdictional discovery, it would simply be more efficient—for both Texas and Mexican courts—to adjudicate the entire case in the same place. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 342 (Tex. 2009) (noting "it is more efficient to continue to use Texas as the forum to resolve the dispute" given prior litigation involving the subject property).

Finally, we are not persuaded by El Diario de Juarez and Diario Digital's arguments regarding convenience factors—*i.e.*, the availability of witnesses and necessity of translating

43

documents.[19] Because this case necessarily spans the United States-Mexico border, these factors would be at play whether Corral brought his claims in Texas or Mexico, and they are not enough to defeat jurisdiction on due-process grounds.

Providing evidence that would render the exercise of jurisdiction unreasonable and offensive to due-process concerns is a high bar, and El Diario de Juarez and Diario Digital have not met it here. *See Michelin*, 584 S.W.3d at 124 n.3 ("[T]he minimum contacts analysis 'encompasses so many considerations of fairness' that '[o]nly in rare instances will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state.'" (quoting *Angelou*, 33 S.W.3d at 281)). We conclude exercising personal jurisdiction over El Diario de Juarez and Diario Digital in this case does not run contrary to due-process requirements.

### *Conclusion*

For the above reasons, we conclude the exercise of specific jurisdiction over El Diario de Juarez and Diario Digital is permissible.

Having overruled each of Appellants' issues, we affirm the trial court's judgment.

YVONNE T. RODRIGUEZ, Chief Justice

February 8, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

---

[19] El Diario de Juarez and Diario Digital more fully argue these points in their mandamus proceeding also before this Court, case number 08-22-00099-CV, involving the trial court's denial of their motion to dismiss for forum non conveniens.